Hexby Clay Greexbebg, J.
Plaintiff wife has moved for a temporary injunction restraining defendant husband, pending determination of her action for a permanent injunction, from prosecuting his action in the State of Connecticut for an annulment or, in the alternative, for a divorce on the ground of cruelty. Defendant, served by substituted service in this action, interposed a special appearance, but has conceded that, by contesting plaintiff’s motion upon the merits, he has appeared generally.
The cases in this branch of the law dealing with injunctions against divorce suits in other States generally involve a spouse who, after leaving the matrimonial domicile, establishes or attempts to establish a residence in another State and sues for a divorce there. The fact situation in this ease is a novel one in this field. Defendant, the president and chairman of the board of directors of Schenley Industries, Inc., has maintained residences in both New York and Connecticut for many years prior to his marriage in 1956 to plaintiff, his fourth wife, indicating by acts and declarations from 1936 to the present day his intent to make Connecticut his legal domicile. Such a fact pattern is encountered in cases of alleged multiple domicile involving claims to estate taxes between contending States (see, e.g., Texas v. Florida, 306 U. S. 398; Matter of Trowbridge, 266 N. Y. 283; Matter of Benjamin, 176 Misc. 518). In view of the unusual aspects of the domiciliary question in this case, it may be helpful to review the governing principles and lines of decision in this State on the issue of the granting by our courts of an injunction against the prosecution of a divorce action in another State.
This court as a court of equity has the power to enjoin a foreign suit for divorce against a resident of the State. But, before the first Williams v. North Carolina decision (317 U. S. 287), our courts denied such relief as unnecessary, since, under the rule then prevailing in this State, the spouse remaining at home could not be bound by a divorce obtained by the other spouse in a court outside the matrimonial domicile without jurisdiction of both parties (Goldstein v. Goldstein, 283 N. Y. 146). In Williams the Supreme Court held that the full faith and credit clause of the Federal Constitution compels recognition by all sister States of the presumptive validity of a divorce decree obtained by a migratory spouse, who satisfies procedural *544 due process requirements in any State and is deemed under its law to have acquired a bona fide domicile there, even though the other spouse does not appear in the action and is not served with process in that State. Thereafter our courts took the view that an injunction should issue in a proper case, where the attempted establishment of domicile by the spouse seeking the divorce is not regarded as bona fide, in order to avoid the necessity of a future action for a judgment declaring the invalidity of the foreign decree by the other spouse having the burden then of striking down the prima facie effect of the other court’s finding of residence (Garvin v. Garvin, 302 N. Y. 96; Pereira v. Pereira, 272 App. Div. 281). In Pereira (p. 288) the following practical considerations were noted: that the existing circumstances justified the view that defendant’s good faith should be litigated in the State of matrimonial domicile rather than in a State of his selection; that the failure to grant the injunction might result in plaintiff’s inability to procure later the proof she then had to establish defendant’s lack of bona fide domicile; and that the question should be litigated now when the court still had jurisdiction of defendant and not left for the future when plaintiff might not be able to serve him with process.
The Williams rule, however, necessarily requires that injunctive relief be denied where defendant has acquired a bona fide domicile in the other State. The power of our courts to restrain a spouse from so proceeding depends upon such spouse’s continued domicile in the forum (Carr v. Carr, 52 N. Y. S. 2d 386, affd. 267 App. Div. 980; Freundlich v. Freundlich, 181 Misc. 850; Boston v. Boston, 205 Misc. 561) and is “in any event limited to restraining a resident from a fraudulent application to a foreign court upon a false statement of residence in the foreign jurisdiction ” (McDonald v. McDonald, 182 Misc. 1006, 1007). One spouse may not prevent the other from obtaining a lawful divorce in another State. Where the circumstances establish that defendant’s domicile in the other State is bona fide, the issuance of an injunction by our courts ‘ ‘ would be an unwarranted interference with the orderly judicial processes of another State ” (Bauer v. Bauer, 16 Misc 2d 560, 561).
On a motion for a temporary injunction pending determination of the issues at a trial the court must, in applying these principles, be mindful also of the basic rule that an injunction pendente lite is granted only where the papers before the court indicate that the right to it is clear (Voorhees & Hobart v. Hobart, 251 App. Div. 111; Geed v. Braunsdorf, 277 App. Div. 1001).
*545 In Hammer v. Hammer (278 App. Div, 396, affd. 303 N. Y. 481) the minority in the Appellate Division, pointing out (p. 399) that defendant husband had set forth ‘ ‘ numerous facts tending to show that he had transferred his domicile to [Florida] ”, would have affirmed the denial of an injunction pendente litb because “respect for the courts of other States requires that such relief should only be granted upon a clear showing of facts justifying it. If the domicile of one of the parties has actually been removed to the other State, our courts are not to interfere (Williams v. North Carolina, 317 U. S. 287).” The majority, however, held that the question of defendant’s good faith should be litigated in this State where both parties had lived as man and wife for 35 years; that plaintiff’s marital status and rights might be irreparably injured if defendant obtained a Florida divorce and remarried. The majority concluded (p. 399): “ While we agree with the observation of the dissenting Justices that if the domicile of the defendant has actually been removed to Florida our courts may not interfere with his prosecution of a divorce action there, and likewise agree with their statement that respect for the courts of other States requires that interference should be only upon a clear showing of facts justifying it, it must also be noted that in granting a temporary injunction we merely maintain the status quo until the tona fides of the husband’s alleged Florida domicile is determined. We no more than hold that the showing so far made entitles plaintiff to a trial of the issues before the Florida action is prosecuted. As any decree of the Florida court must rest upon the jurisdictional base of the defendant’s domicile, and that jurisdictional issue would be subject to the judicial consideration of our courts after the event, we think it even more appropriate that under the circumstances here our trial court should take up the issue of domicile in advance.”
The Court of Appeals affirmed, stating (pp. 483-484) that there was basis in the record for the exercise of discretion by the Appellate Division in issuing a temporary injunction.
Finally, it should be noted that, if a temporary injunction is denied and defendant thereafter defaults in answering the complaint and obtains a divorce decree in Connecticut prior to the inquest herein, our courts would be without authority to grant any relief in this action. A defendant cannot be enjoined from procuring a decree which has already been obtained and is a fait accompli. Moreover, if defendant fails to interpose an answer, our courts would be without authority to permit the complaint to be amended to substitute a cause of action for a judgment declaring the invalidity of the Connecticut divorce *546 decree. Where there is no answer by a defendant, the judgment cannot be more favorable to the plaintiff than that demanded in the complaint (Civ. Prac. Act, § 479). Under such circumstances the injunction action would be rendered academic and plaintiff would be relegated to bringing a new action for a declaratory judgment, in which jurisdiction of the defendant would again have to be obtained. (See Sivakoff v. Sivakoff, 280 App. Div. 106.)
We turn, then, to an evaluation of “ the showing so far made ” in this case as to defendant’s domicile. Certain fundamental rules in the law of domicile must be kept in mind. While a person may have more than one residence at the same time, he can have only one domicile at a given time. ‘ ‘ Besidence in fact, coupled with the purpose to make the place of residence one’s home, are the essential elements of domicile ” (Texas v. Florida, 306 U. S. 398, 424, supra). “ The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change. The question is one of fact rather than law, and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals ” (Matter of Newcomb, 192 N. Y. 238, 250). In modern times the problem has been complicated by the desire of those wealthy enough to own multiple residences in different States to obtain the benefit of more favorable income and estate taxes in one of those States (Matter of Benjamin, 176 Misc. 518, supra). In such circumstances the determination of domicile involves a comparison of the weight of the evidence, of the actual facts as to residence and defendant’s real attitude and intention as disclosed by his entire course of conduct.
Plaintiff states that in each of the five years since her marriage in this State to defendant they have lived for 9 or 10 months at his town house in this city, going on short vacation trips for the Christmas and Easter holidays to his house in Miami Beach, and spending the Summer months at his Connecticut farm. She has set forth facts tending to show that defendant’s business, banking, social, religious and philanthropic affiliations are centered in this city. Her contention is that his alleged domicile in the State of Connecticut was contrived to avoid New York’s State income tax, there being no State income tax in Connecticut, and was created artificially by means of self-serving declarations and purely formal acts.
Defendant has submitted proof that in 1936, 20 years before he married plaintiff, he purchased Conyer’s Farm, a large estate in Greenwich, Connecticut, covering a plot of over 1,000 *547 acres and containing three residential buildings — a main house (as commodious, by itself, as the town house purchased in 1950), a guest house, and a gate house — and has ever since, in all operative as well as formal acts, legally established his status as a domiciliary of Connecticut, and has been recognized as such by the authorities. Since then he has voted only in Connecticut; given his Connecticut address for all transactions, bank accounts, tax returns, passport applications, etc., and also in the application for this marriage license; and filed New York State nonresident income tax returns. He points out that plaintiff also has given since her marriage to him the Connecticut address as her address in all tax returns and documents — plaintiff in reply asserting that she did so pursuant to his instructions. He states that he has lived at his Connecticut home for a substantial part of each year and is in New York less than six months each year, as reported in detail in his nonresident tax returns, approved after investigation by the State Tax Commission accepting the tax allocated to the period reported for New York. His claim is that the residences maintained at different times by him in this city, whether in the form of rented apartments, hotel suites, or the town house purchased in 1950, were merely necessary and useful conveniences or facilities, arising from the requirements of his business activities at the main office of his firm and attendant social and philanthropic associations in this city.
There are many other details in the papers presented by the parties, including the affidavits of two servants on plaintiff’s behalf and of seven servants, together with numerous documentary exhibits, on defendant’s behalf. Sufficient has been stated to point the way to decision.
In view of defendant’s long-standing Connecticut domiciliary status antedating his marriage to plaintiff and his intended and apparent continuance thereof to the present day, it is evident, whether or not such position is sustained at a trial, that the presentation thus far made on this application for an injunction pendente lite falls short of that “clear showing of facts” required to justify such relief. At this stage it cannot be said categorically that plaintiff is entitled to a trial of the issue in our courts before the Connecticut action is tried. The issuance of a temporary injunction before a trial of the issue would be an unwarranted interference with defendant’s right to invoke the judicial processes of the State of Connecticut, which, on the present showing, has at least equivalent jurisdiction to entertain his suit in our courts to enjoin it.
*548 There are, however, certain considerations which must be taken into account to prevent hardship and injustice. The issue of domicile can be resolved only at a trial. Indeed, defendant has suggested that, if the court believes that an issue of fact has been raised, it be set down for immediate hearing. Defendant, then, is willing and ready to try the issue, and can have no valid objection to the court’s conditioning denial of plaintiff’s motion for a temporary injunction upon the service by him of an answer in this action. Refusal to do so could properly be regarded as bad faith warranting resolution of the doubt in favor of granting the temporary injunction. An answer by defendant will avoid — if defendant should procure his Connecticut decree before the trial herein — the necessity of a new action by plaintiff for a declaratory judgment and the difficulty of obtaining jurisdiction of defendant.
The motion for a temporary injunction is accordingly denied on condition that defendant interpose an answer in this action. The interim stay, extended on argument until determination of the motion, is further extended until the date of service of defendant’s answer. Settle order.