■ In the Matter of the Estate of JAMES A. HART, Deceased. MARION A. HART et al., as Executors of JAMES A. HART, Deceased, Respondents; BARBARA A. HART, Appellant.— In an accounting proceeding in which the issue raised by the testator's surviving spouse's objection and petition for construction was severed from the other issues, the surviving spouse appeals from a decree of the Surrogate's Court, Suffolk County, entered January 31, 1968, which dismissed the objection and construed the will against appellant. Decree affirmed, with costs payable by appellant personally. The construction sought is with respect to paragraph Fourth of the will. That paragraph referred to an antenuptial agreement executed by the parties seven years earlier and the paragraph continued in pertinent part: "In accordance with said agreement * * * I hereby direct my executors * * * [to pay appellant $50,000 if she] at

the time of my death is married to me and we have not been separated by a court of competent jurisdiction * * *." In the agreement the parties waived their interest in each other's estate, including their right of election, and also agreed that the decedent would leave petitioner $50,000 in his will "unless the parties hereto have been divorced or separated by a decree of a court of competent jurisdiction, *regardless of which party hereto may be at fault*" (emphasis supplied). Prior to the demise of her husband, appellant obtained a judicial decree of separation. She contends that the absence of the italicized language meant that the decedent had changed his mind since the execution of the antenuptial agreement and thus intended to leave her the legacy stated therein only if she were not the one at fault. We disagree and concur with the conclusions of the Surrogate that the language in the will is unambiguous and that "there is no sufficient basis for a construction which in effect would insert words to limit the effect of the separation." We are also of the opinion that the clause in question in the agreement does not violate public policy as expressed in the older cases (see *Matter of Rhinelander*, 290 N. Y. 31, 38) or as embodied in statute (General Obligations Law, § 5–311; see 33 Brooklyn L. Rev. 308, 311–313 [1967]), since the agreement is not promotive of marital dissolution (*Benjamin* v. *Benjamin*, 197 Misc. 618, affd. 277 App. Div. 752, affd. 302 N. Y. 560; *Harvard College* v. *Head*, 111 Mass. 209; see Ann. 57 ALR 2d 942, Antenuptial Contract — Forfeiture). Moreover, the design of the agreement is to effect marital reconciliation during periods of strife and is analogous to contracts between spouses where the injured spouse receives consideration for her forbearance in instituting an action for divorce (*Rodgers* v. *Rodgers*, 229 N. Y. 255; *Pettit* v. *Pettit*, 107 N. Y. 677; *Adams* v. *Adams*, 91 N. Y. 381; Ann. 11 A. L. R. 277, Agreement to Prevent Divorce). Such agreements are not violative of public policy since "it would be a curious policy which should forbid husband and wife to compromise their differences, or preclude either from forgiving a wrong committed by the other" (*Adams* v. *Adams, supra*, p. 384). Beldock, P. J., Christ, Brennan, Benjamin and Martuscello, JJ., concur.