MOLLY W. MILBANK, Respondent, *v.* SAMUEL R. MILBANK et al., Appellants.

First Department, April 15, 1971.

*Richard L. Russell* of counsel (*Anthony F. Cilluffo* with him on the brief; *Hale & Russell,* attorneys), for appellants.

*Sidney Rothenberg* of counsel (*Rothenberg & Kalman,* attorneys), for respondent.

KUPFERMAN, J. Plaintiff Molly W. Milbank and defendant Samuel R. Milbank were married in 1934, and there are three adult issue. They entered into a separation agreement on June 29, 1967, amended February 1, 1968. In June, 1969, he made his first trip to Nevada. In July, he gave up his New York apartment and left for Nevada and started a divorce proceeding in Reno on August 12, 1969, receiving his divorce decree on September 5, 1969. He married the codefendant on September 9, 1969. They lived in Nevada, but she maintained a New York apartment for several months after the marriage, giving it up when this action was commenced by service on November 6, 1969 on the husband at his office at 20 Exchange Place in New York City, and on the codefendant at her New York apartment the same day.

The only question before us in this action for declaratory judgment by the prior wife is whether the husband was a domiciliary of the State of Nevada at the time he commenced his action for divorce against the plaintiff in that State.

The husband has not had a residence in New York City, and has since July of 1969 continually leased an apartment in Reno, Nevada. He owns some property in Nevada and voted there; he surrendered his New York driver's license and obtained one in Nevada. He has seemingly complied with the usual checklist of items to indicate domicile in Nevada. (2 Lindey, Separation Agreements and Ante-Nuptial Contracts, Out-of-State Divorce, § 31, p. 93.)

He has, however, continued his partnership in a stock brokerage firm in New York City and as an officer and director of corporations whose offices are in New York City, and he has commuted to New York City from Nevada to carry on his business. To avoid the problem of a New York residence, when returning to the metropolitan area he spent his nights at a hotel in Newark, N. J. This was obviously to avoid the effect of section 250 of the Domestic Relations Law.

The plaintiff contends that the domicile alleged in Nevada was colorable, and the defendants contend that the finding by the trial court to that effect was against the weight of the evidence.

Initially, of course, we must give full faith and credence to the determination of our sister State Nevada, provided that the court in Reno had jurisdiction. (*Williams* v. *North Carolina,* I, 317 U. S. 287 [1942].) " The burden of undermining the verity

which the Nevada decrees import rests heavily upon the assailant." (*Williams* v. *North Carolina,* II, 325 U. S. 226, 233–234 [1944], rehearing den. 325 U. S. 895; 1 Foster-Freed, Law and the Family, § 9:12.) But as the latter case showed, it can be done. (Foreign Divorce-Recognition-Domicile, Ann. 28 ALR 2d 1303 [1953].)

It is obvious here, however, that the defendant Samuel Milbank did everything that he could, consistent with his business relationship in New York City, to try to establish Nevada as his domicile. While it is easily apparent that his move to Nevada was for the purposes of divorce and remarriage, as long as he complied with all of the indicia, and he did, for establishment of domicile, we should not go behind the determination by the Nevada court. (Cf. *Vanderbilt* v. *Vanderbilt,* 1 N Y 2d 342 [1956], affd. 354 U. S. 416 [1957]; *Estin* v. *Estin,* 296 N. Y. 308 [1947], affd. 334 U. S. 541 [1948].)

Coincidentally, it should be noted that if he had remained in New York and taken advantage of the recent change in the New York State law with respect to actions for divorce (Domestic Relations Law, § 170), he would be in a position, based on his separation agreement, to obtain a divorce. (*Gleason* v. *Gleason,* 26 N Y 2d 28 [1970].)

Under the circumstances, Nevada had jurisdiction to grant the divorce, and, accordingly, the subsequent remarriage was not interdicted.

The judgment declaring null and void both the judgment of divorce obtained in Nevada by the defendant-appellant, Samuel R. Milbank, and his subsequent remarriage to the defendant-appellant Marilynn O. Baker, also known as Marilynn O. Milbank, should be reversed and vacated, on the law and the facts, without costs and disbursements, and the divorce should be declared valid and the cause of action with respect to the question of the validity of the second marriage should be dismissed. Settle order.

McGIVERN, J. P. (concurring). I concur in the result and in the determination of the majority opinion that the record supports the conclusion that defendant husband had a bona fide domicile in Nevada for a sufficient period before his divorce decree was handed down, and that the marriage between plaintiff and defendant husband was effectually terminated by the Nevada divorce decree. (See *Cook* v. *Cook,* 342 U. S. 126; *Matter of Newcomb,* 192 N. Y. 238; *Matter of Best,* 20 A D 2d 743.) Nor can I find from this record that his subsequent activities have impugned that decree or our recognition of it. (See *Sorrentino* v. *Mierzwa,* 25 N Y 2d 59, 65.)

NUNEZ and TILZER, JJ., concur with KUPFERMAN, J.; McGIVERN, J. P., concurs in an opinion; McNALLY, J., dissents and votes to affirm for the reasons stated in the opinion of Mr. Justice SANDIFER at Trial Term.

Judgment, Supreme Court, New York County, entered on December 21, 1970, reversed and vacated, on the law and the facts, without costs and without disbursements, the divorce declared valid and the cause of action with respect to the question of the validity of the second marriage dismissed and severed.

Settle order on notice.