**Susan L. ROSENSTIEL, Plaintiff,**

v.

**Lewis S. ROSENSTIEL, Defendant.**

**No. 67 Civ. 1883.**

United States District Court,
S. D. New York.

Dec. 17, 1973.

Shorenstein & Shorenstein, New York City (Maurice Shorenstein, New York City, of counsel), Finley, Kumble, Underberg, Roth & Grutman, New York City (Norman Roy Grutman, Jeffrey Stephen Ramer, New York City, of counsel), for plaintiff.

Greenbaum, Wolff & Ernst, New York City (Frederic S. Nathan, Robert D. Croog, Maurice C. Greenbaum, New York City, of counsel) Kurtz & Vassallo, New York City (John A. Vassallo, New York City, of counsel), for defendant.

## OPINION

ROBERT J. WARD, District Judge.

This is an action to determine the continued validity of an antenuptial agreement executed by the parties to this action in light of the subsequent divorce obtained by defendant Lewis S. Rosenstiel in an *ex parte* Florida proceeding. Plaintiff Susan L. Rosenstiel seeks to enforce a provision of the agreement, as amended, which made certain financial provision for her in lieu of her statutory right of inheritance. She also seeks to impose a constructive trust on the cash proceeds of a sale of stock by defendant which she contends form the property she will be entitled to under the agreement. She also seeks damages for defendant's allegedly tortious course of conduct as well as counsel fees. In order to place this dispute in context, a review of pertinent facts and prior legal proceedings will be useful.

Susan and Lewis Rosenstiel were married in New York City on November 30, 1956. This was plaintiff's second marriage, her prior marriage having been dissolved by a decree of absolute divorce in Mexico on October 2, 1954. The day before their marriage plaintiff and defendant entered into the aforementioned antenuptial agreement which, as later amended, provided that it should be interpreted and governed by the laws of New York and that plaintiff's right to receive any benefits thereunder was subject to defeasance in the event she predeceased the defendant or in the event that they were "divorced or separated by decree of a court of competent jurisdiction or separated by written agreement . . . ," prior to the death of defendant.

After a period of extreme acrimony, the parties separated in October, 1961. Plaintiff remained in their home in New York; defendant went to their home in Greenwich, Connecticut. On November 9, 1961, defendant instituted an action against plaintiff in Connecticut (a) for an annulment on the ground that he was fraudulently induced to marry her, and (b) for a divorce on the grounds of plaintiff's cruel and inhuman treatment of defendant. Thereafter, on January 3, 1962, defendant amended his complaint in the Connecticut action to include as an additional ground for annulment that plaintiff's prior Mexican divorce from her first husband was void in that the Mexican court was without jurisdiction. Plaintiff appeared specially in this Connecticut action, claiming that her husband was not a domiciliary of that State and that the marital *res* was not located there.

On or about November 15, 1961, plaintiff brought an action in the Supreme Court of the State of New York for New York County seeking to enjoin defendant from prosecuting his Connecticut action on the ground that defendant's claim to be a domiciliary of the State of Connecticut was false and fraudulent. Plaintiff's motion in the New York action for a temporary injunction pending determination of her action for a permanent injunction was denied. Rosenstiel v. Rosenstiel, 32 Misc.2d 542, 225 N.Y.S.2d 905 (Sup.Ct.N.Y.Co.), aff'd, 15 A.D.2d 880, 225 N.Y.S.2d 912 (1st Dep't), appeal denied, 15 A.D.2d 904, 225 N.Y.S.2d 915, motion denied, 11 N.Y.2d 882, 227 N.Y.S.2d 919, 182

N.E.2d 407 (1962). Thereafter, on April 26, 1962, defendant discontinued the Connecticut action; and on that same day instituted an action for annulment in the Supreme Court of New York for New York County alleging as the basis of that court's jurisdiction that Mrs. Rosenstiel was a resident of New York, as claimed in her New York injunction action.

Defendant herein was granted an annulment after trial on the ground that plaintiff's Mexican divorce decree dated October 2, 1954, entered upon the personal appearance of plaintiff's then-husband and the appearance of plaintiff by Mexican counsel, was void. Rosenstiel v. Rosenstiel, 43 Misc.2d 462, 251 N.Y. S.2d 565 (Sup.Ct.N.Y.Co.1964). The judgment of the New York court expressly reserved for determination plaintiff's right to support and maintenance and to counsel fees. The annulment was vacated by the Appellate Division, 21 A.D. 2d 635, 253 N.Y.S.2d 206 (1st Dep't 1964); the New York Court of Appeals affirmed, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965); and a petition for a writ of certiorari to the Supreme Court was denied, 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682 (1966).

Shortly prior to denial of certiorari, plaintiff moved in the New York Supreme Court, pursuant to both the reservation in the judgment in the annulment action and N.Y. Domestic Relations Law §§ 236 and 237 (McKinney's Consol. Laws, c. 19, 1964), for a determination of her right to and the amount of her support and maintenance and for counsel fees. Her motion was granted, and the trial was resumed for such purpose during the period September 13 to October 20, 1966, before Mr. Justice Helman. At that trial, defendant asserted as a defense to plaintiff's claim the charge that plaintiff had been guilty of cruel and inhuman treatment and abandonment; and the testimony of witnesses was submitted in support of this charge. Section 236 of the N.Y. Domestic Relations Law (McKinney 1964) expressly authorizes the court to require a husband to provide suitably for the support of his wife, notwithstanding her misconduct "unless such misconduct would itself constitute grounds for separation or divorce." By decision of November 30, 1966, the trial court found that plaintiff had not been guilty of misconduct sufficient to sustain an action for divorce or separation against her and accordingly awarded her support and maintenance and counsel fees. Rosenstiel v. Rosenstiel, N.Y.L.J., Dec. 1, 1966, p. 17, col. 7 (Sup.Ct.N.Y.Co.1966). On June 6, 1967, the Appellate Division modified the award but expressly affirmed the trial court's finding with respect to the wife's misconduct. 28 A.D.2d 651, 280 N.Y.S.2d 624 (1st Dep't 1967). On November 29, 1967, the Appellate Division's Order was affirmed without opinion by the New York Court of Appeals. 20 N.Y.2d 925, 286 N.Y.S. 2d 278, 233 N.E.2d 292 (1967).

On or about March 24, 1967, and while this appeal of the support decree was pending, defendant instituted the Florida divorce action alleging that his wife had "been guilty of extreme cruelty" to him and had "also been guilty of habitually indulging in a violent and ungovernable temper." Jurisdiction was based on defendant's assertion of his domicile in Florida. Plaintiff claims that the grounds raised in this divorce proceeding were identical to those previously tried and determined in her favor in the New York action. However, after she was constructively served by publication in the Florida action, plaintiff did not appear and defaulted therein. She offers this Court two reasons for her default in the Florida proceeding. The first is that if she appeared in the Florida action, she would risk modification of the support award granted in New York. See Lynn v. Lynn, 302 N.Y. 193, 97 N.E. 2d 748, cert. denied, 342 U.S. 849, 72 S.Ct. 72, 96 L.Ed. 640 (1951). The second reason advanced by plaintiff is that she was afraid that if she went to Florida her husband would utilize his alleged "vast underworld connections," concerning the existence of which plaintiff is

totally convinced, to cause her physical harm. This aspect of plaintiff's testimony is so unsubstantiated and so totally incredible that the Court gives it no weight. Plaintiff claims that the risks precluded her from exercising her right to invoke the Full Faith and Credit Clause of the United States Constitution, Art. 4, § 1, in the Florida action.

Plaintiff, not wanting to appear in the Florida action, returned to the New York Supreme Court seeking an injunction against defendant's prosecution of the Florida action. The injunction was denied for lack of jurisdiction. Rosenstiel v. Rosenstiel, 30758/1962 and 31198/1961 (Sup.Ct.N.Y.Co. April 21, 1967). She appealed to the Appellate Division and moved for an order restraining defendant from prosecuting the Florida divorce action pending the hearing and determination of her appeal, but the application for a stay was denied on May 4, 1967. *See* Rosenstiel v. Rosenstiel, 278 F.Supp. 794, 798 (S.D. N.Y.1967). On the afternoon of that date, defendant's Florida counsel filed a Praecipe for Default or Decree Con Professo and a default against plaintiff was entered. On May 5, 1967, after consultation with the Florida trial judge, the morning of May 12, 1967, was set down as the date for a final divorce hearing. A Final Judgment of Divorce was obtained by defendant against plaintiff in the Florida action at 11:28 A.M. on that date. This Judgment, while filed on the date rendered, was not "entered" or "recorded" in the Circuit Court Minute Book until the following Monday—May 15, 1967.

In the meantime, at 4:25 P.M. on May 12, 1967, the day defendant obtained the Final Judgment of Divorce, a judge of this Court who was unaware of the Florida Judgment signed an *ex parte* order to show cause brought by plaintiff in this action which provided that defendant and all those acting on his behalf be "restrained from prosecuting, going forward or otherwise taking or procuring to be taken or entered—by default —any Judgment or Decree of Divorce against the plaintiff herein, in the defendant's pending action for a divorce instituted by him in the Circuit Court of the 11th Judicial Circuit of Florida, in and for Dade County, Florida, on or about March 24, 1967. . . ."

At the hearing on the order to show cause and in plaintiff's supporting papers, plaintiff sought to convert the original motion for a prohibitory injunction, which had become moot, into a motion for a mandatory injunction requiring defendant to undo the acts already completed; plaintiff also moved to punish defendant and/or his attorneys, agents, or others acting on his behalf, for noncompliance with the temporary restraining order. Both motions were denied. Rosenstiel v. Rosenstiel, 278 F.Supp. 794 (S.D.N.Y.1967) (Tenney, J.).

The Court turns first to the issue of the validity of defendant's *ex parte* Florida divorce. Plaintiff contends that defendant was not a bona fide domiciliary of Florida and that, therefore, the Florida court was without jurisdiction to grant defendant a divorce. She further contends that the decree was procured by fraud in that defendant did not apprise the Florida court of the prior proceedings in New York before Mr. Justice Helman.

The Supreme Court has held:

"Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil. Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 188 U.S. 14. . . . , 23 S.Ct. 237, 47 L.Ed. 366. The domicil of one spouse within a State gives power to that State, we have held, to dissolve a marriage wheresoever contracted. In view of Williams v. North Carolina, *supra* [317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942)], the jurisdictional requirement of domicil is freed from confusing refinements about 'matrimonial domicil,' see Davis v. Davis, 305 U.S. 32, 41, 59 S.Ct. 3, 6, 83 L.Ed. 26 and the like. . . ."

Williams v. North Carolina (II), 325 U.S. 226, 229–230, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577 (1945).

But where domicile is lacking, the courts of a state are without jurisdiction to grant a divorce. Alton v. Alton, 207 F.2d 667 (3d Cir. 1953), cert. granted and then dismissed as moot, 347 U.S. 610, 74 S.Ct. 736, 98 L.Ed. 987 (1954). Furthermore, *Williams (II)* holds that the question of domicile in an *ex parte* divorce proceeding is open to collateral attack in a sister state; and upon a finding that domicile was lacking, the decree of divorce is not entitled to full faith and credit.

▮ The creation and changing of one's domicile is a question of fact. Williams v. North Carolina (II), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Matter of Newcomb, 192 N.Y. 238, 250, 84 N.E. 950, 954 (1908). Under the law of both Florida and New York, domicile consists of actual residence within a state with the intention of making that state one's permanent home or one's home for an indefinite period. *E. g.*, Wade v. Wade, 93 Fla. 1004, 113 So. 374 (1927); Perez v. Perez, 164 So.2d 561 (Fla.D.C. of App., 1964); Carter v. Carter, 19 A.D.2d 513, 240 N.Y.S.2d 141 (1st Dep't 1963). Where a previous finding of domicile is subjected to collateral attack, "[t]he burden of undermining the verity which the [prior] decree[s] import rests heavily upon the assailant." Williams v. North Carolina (II), *supra,* 325 U.S. at 233–234, 65 S.Ct. at 1097.

In the ordinary case, a finding of a change of domicile is readily apparent. A person gives up his old home and establishes a new one so that he has only one place of abode at any one time. But where, as here, a person maintains several households in different states, the determination is rendered more difficult. Obviously, those wealthy enough to have multiple residences have an equal right along with those less fortunate to change their domiciles. The effect of their wealth simply renders the factual determination that much more difficult. "In such circumstances the determination of domicile involves a comparison of the weight of the evidence, of the actual facts as to residence and defendant's real attitude and intention as disclosed by his entire course of conduct." Rosenstiel v. Rosenstiel, 32 Misc.2d 542, 546, 225 N.Y.S.2d 905, 910 (Sup.Ct.N.Y.Co.), aff'd, 15 A.D.2d 880, 225 N.Y.S.2d 912 (1st Dep't), appeal denied, 15 A.D.2d 904, 225 N.Y.S.2d 915 (1st Dep't 1962).

▮ The Court finds, on balance, that defendant has established that he effected a bona fide change of domicile to Florida in January, 1965, although he retained ownership of his New York townhouse until 1968 and still owns the Connecticut property. As early as 1964, defendant told friends that he wanted to sell his business and move to Florida where he would have time to sail and fish. He expressed dissatisfaction with zoning decisions in Connecticut, unhappiness about his relationship with his family, and a general desire to get away from New York and Connecticut. In various sworn statements made in 1965, defendant listed Florida as his residence or "place of abode" which are in their contexts synonymous with domicile.

In January, 1965, defendant purchased a new yacht which he berthed in Florida. Contemporaneously, he began negotiations for the sale of his stock in Schenley Industries, Inc. ("Schenley"). This sale was finally consummated in 1968. At about the same time, defendant also transferred his bank accounts, with the exception of two small farm accounts, from Connecticut to Florida while retaining other accounts in California, Texas, and New York. He closed his safe deposit box in Connecticut, opened one in Florida, and removed to Florida all his securities except those which were being bought or sold or received as stock dividends. In April, 1965, defendant commenced negotiations for the sale of his New York City house which sale was consummated on January 26, 1968. In December, 1965, defendant

began construction of a swimming pool on his Florida property.

Since 1966, defendant has listed Florida as his domicile on official documents, except for vehicles which he previously owned and for which he did not transfer the registration to Florida until a year or two after 1965. Schenley, however, in its reports to the Alcohol and Tobacco Tax Division of the Treasury Department did not report a Florida address for defendant until December 20, 1967. On several of these reports filed by Schenley prior to December 20, 1967, both Connecticut and New York home addresses were listed for Mr. Rosenstiel which tends to indicate that the person preparing the report either was not concerned with domicile in the legal sense or had no idea of which of defendant's numerous residences was his legal domicile. These reports, therefore, have little or no probative value in refuting that defendant was a Florida domiciliary at the time he obtained his Florida divorce and that he has remained a domiciliary of that state up until the present time.

From 1965 through 1968, defendant spent most of his time in Florida. He spent approximately three months during the summer in Connecticut, returning to Florida at the end of the hurricane season in late September or October and remaining there until about June of the following year. He occasionally spent a winter week-end in Connecticut if he had been in New York, where Schenley's main office was located. Defendant apparently spent as little time as possible in New York consistent with his continuing duties as chairman of the board of Schenley.

After the sale of his interest in Schenley and of his New York City townhouse in 1968 and until the present, defendant has spent an even greater part of his time in Florida and very little time in New York. Although he has continued to spend summers in Connecticut, he has not been there during the winter months since 1968.

■ This evidence presents a picture of a man who, in fact, established actual residence in Florida as early as 1965 with the intent that it be permanent. He did everything possible to effect this change consistent with his continuing duties until 1968 as the chairman of the board of a major corporation. While it is true that much of what defendant did to effectuate the change consisted of formal acts, that is almost always the case when a person is effectuating a change of domicile. It has never been held nor has plaintiff suggested that in order to effect a change of domicile, a person can never again set foot in his former domicile. Defendant's retention of homes in other states including his former domicile has led the Court to scrutinize with utmost care his purported change of domicile, but it does not preclude a finding that such a change was, in fact, effectuated.

Furthermore, defendant did not merely sojourn in Florida long enough to get a divorce in that jurisdiction so as to raise a presumption against his change of domicile. Indeed, defendant, relieved of his heavy business obligations, has spent even more time in Florida since 1968—after obtaining his divorce from plaintiff.

■ Given defendant's actual change of residence coupled with his intent that it be permanent, his motives for such a change of domicile are immaterial. Milbank v. Milbank, 36 A.D.2d 292, 320 N.Y.S.2d 436 (1st Dep't), aff'd, 29 N.Y. 2d 844, 327 N.Y.S.2d 856, 277 N.E.2d 288 (1971).

Plaintiff further argues that defendant's Florida divorce was procured by fraud and is, therefore, subject to collateral attack. In sum, plaintiff argues that defendant perpetrated a fraud upon the Florida court in failing to bring to that court's attention the prior findings of the New York court in the support action and in failing to take affirmative action in Florida after the entry of the restraining order by this Court. The

latter argument was disposed of by Judge Tenney in his opinion on plaintiff's motion for a preliminary injunction:

"It is not disputed that the Florida divorce action proceeded to final judgment some five hours prior to the signing of the restraining order. The divorce decree was signed by the presiding judge and filed for the record at 11:28 A.M. The divorce decree was entered in the progress docket on Monday, May 15, 1967, and was immediately forwarded to a clerk to be recorded in the minute book. . . .

"Interpreting the restraining order strictly, defendant was restrained from taking any affirmative action to obtain the Florida divorce. By the time that defendant's counsel was made aware of such order, any affirmative action had already been completed. In short, I do not consider defendant's inaction to be a violation of the temporary restraining order.

. . . . . .

". . . It is perfectly obvious that counsel for defendant thought that once the divorce decree was filed nothing further was to be done and that any further recording steps would take place on that same day. It does not seem likely that when counsel were informed of the restraining order on the morning of May 13, 1967, they thought there was anything else they might do to comply with such order."

Rosenstiel v. Rosenstiel, 278 F.Supp. 794, 803–804 (S.D.N.Y.1967).

Thus, plaintiff's argument that the Florida judgment is void because obtained in defiance of injunctive restraint is refuted by Judge Tenney's opinion.

Plaintiff's argument that defendant's failure to bring the prior determination in the New York support action to the attention of the Florida court is fraudulent and subjects the Florida judgment to collateral attack in this Court is without merit. Even assuming that the same issues were tried in the New York support action and the Florida divorce action so that the doctrine of *res judicata* would or should have been applied by the Florida court had it had knowledge of the prior New York litigation, this Court lacks jurisdiction to nullify the Florida proceeding. It is well settled that such an attack must be raised as an affirmative defense or on direct appeal. Simons v. Miami Beach First National Bank, 157 So.2d 199 (Fla. D.C. of App.1963), aff'd, 381 U.S. 81, 85 S.Ct. 1315, 14 L.Ed.2d 232 (1965); Lynn v. Lynn, 302 N.Y. 193, 97 N.E.2d 748, cert. denied, 342 U.S. 849, 72 S.Ct. 72, 96 L.Ed. 640 (1951); Chenu v. Board of Trustees, Police Pension Fund, 12 A.D.2d 422, 212 N.Y.S.2d 818 (1st Dep't 1961), aff'd without opinion, 11 N.Y.2d 688, 225 N.Y.S.2d 760, 180 N.E. 2d 913, modified, 11 N.Y.2d 765, 227 N.Y.S.2d 14, 181 N.E.2d 760, cert. denied, 370 U.S. 910, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962). The law is also clear that where there are two inconsistent judgments of courts having jurisdiction, the later judgment controls in a third action. Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Lynn v. Lynn, *supra*; *Chenu, supra.*

*Chenu, supra,* is directly in point. There, the wife obtained a decree of separation in New York based upon her husband's "cruel and inhuman treatment and abandonment." The husband thereafter changed his domicile to Florida and commenced a divorce action against his wife who was served by publication. The wife defaulted in the Florida proceedings, and the husband was awarded a divorce on the ground of "cruelty". In an action brought by the husband's second wife to have herself declared the widow, the motion by the first wife for declaratory relief invalidating the Florida divorce was dismissed. The court held that even if the husband had committed fraud in not properly advising the Florida court of the prior proceedings in New York, such fraud did not affect the jurisdiction of the Florida court, whose decree was entitled to full faith and credit. *Res judicata* it was there held and is

equally applicable here, is an affirmative defense which the first wife failed to plead in the Florida action and, thereby, waived.

Judge Botein, writing for a unanimous court, held:

"It is undisputed that Chenu had established a lawful domicile in Florida, before bringing the divorce action and that service was effected properly on the nondomiciliary defendant by publication. The Florida judgment could be nullified by collateral attack in this State if there had been fraud in the purported establishment of residence by the decedent [herein defendant], or improper service upon defendant [herein plaintiff]. Given the ingredients of domicile and proper service, however, the Florida divorce decree is invulnerable to attack in this State, since there is no showing of fraud that vitiates its jurisdictional underpinning. [Citations omitted.]

"It is well-settled law that 'the fraud for which a judgment can be impeached must be in some matter other than the issue in controversy in the action' (Crouse v. McVickar, 207 N.Y. 213, 218, 100 N.E. 697, 698, 45 L.R.A., N.S., 1159). See also Frost v. Frost, 260 App.Div. 694, 23 N.Y.S.2d 754. It is no challenge to the jurisdiction of the Florida court that the decedent husband purportedly misrepresented the scope and effect of the New York separation decree, as a false presentation which distorts the thrust of a formal judgment of a sister state is in essence no different from any other type of perjury committed in the course of litigation. This was intrinsic fraud, which may not be attacked collaterally; and relief would have been available only in the original action (Fuhrman v. Fanroth, 254 N.Y. 479, 173 N.E. 685; Rivero v. Ordman, 277 App.Div. 231, 97 N.Y.S.2d 864)." 12 A.D.2d at 424, 212 N.Y.S.2d at 820.

Plaintiff's attempts to distinguish this case from *Chenu* are unpersuasive inasmuch as concealment of a prior judgment constitutes intrinsic fraud. Douropoulos v. Douropoulos, 67 Misc.2d 518, 323 N.Y.S.2d 92 (Sup.Ct. Kings Co. 1971); DiRusso v. DiRusso, 55 Misc.2d 839, 287 N.Y.S.2d 171 (Sup. Ct. Nassau Co. 1968). The Florida cases are in accord. Matsis v. Matsis, 155 Fla. 786, 21 So.2d 545 (1945); Simons v. Miami Beach First National Bank, *supra*. Apparently aware that this Court can only entertain a collateral attack on the Florida judgment if that judgment were obtained by "extrinsic" rather than "intrinsic fraud", plaintiff attempts to denominate defendant's lack of disclosure to the Florida court "extrinsic fraud". She does so by claiming that her default was actively procured and that all the inequities of an *ex parte* proceeding were then exploited by complete nondisclosure and deception. The evidence does not support plaintiff's contention that her default was actively procured. As noted above, plaintiff herein was properly served by publication in the Florida proceeding and chose not to appear. She feared that the substantial award of support granted to her by the New York courts might be modified. She also felt that her husband would cause her physical harm. Although there is little doubt in the Court's mind that plaintiff actually believed that she would be physically harmed, the Court finds no valid basis for her apprehension. Since there is no proof that defendant threatened her in any way— except as the result of litigation which he was within his rights in bringing —it cannot be said that he procured her absence. Even accepting as true plaintiff's account of the stormy events immediately following her separation from defendant, these events would have occurred about six years before the Florida action was instituted. There has been no evidence of any action in the intervening years which should reasonably have caused plaintiff to be put in fear for her physical safety. Since there is a failure of proof that plaintiff's default was actively procured by defendant, plaintiff

has not sustained her burden of proving the existence of extrinsic fraud. The Florida decree of divorce is, therefore, not open to collateral attack.

Plaintiff further argues that the Florida judgment is also vulnerable to any attack permitted under Florida law. She argues that under Rule 1.540 (b), 31 F.S.A. of the Florida Rules of Civil Procedure,[1] a Florida decree is impeachable for intrinsic fraud either on motion or in a separate action such as the instant one. Assuming that this Court can, in effect, sit as a Florida court, it is clear that plaintiff misconceives the Florida Rule. Under the Florida Rule, a motion must be made in the same proceeding in which the judgment from which the moving party seeks relief was rendered. Alexander v. First National Bank of Titusville, 275 So.2d 272, 273 (Fla.D.C. of App.1973). Obviously, the instant action is not the same proceeding. Nor in this a matter in which the Florida courts would entertain an independent action based upon "fraud upon the court." Rule 1.540(b), 31 F.S.A., Florida Rules of Civil Procedure. This phrase generally comports with the definition of extrinsic fraud. In Alexander v. First National Bank of Titusville, *supra*, plaintiff instituted an action to set

"aside certain conveyances of real property claimed to have been fraudulently made for the purpose of defeat-

ing plaintiff's effort to collect a deficiency judgment which it had obtained against defendants in a prior foreclosure action. The final judgment of foreclosure was entered on 11 March 1970. The deficiency judgment was entered on 27 August 1970. The present action was instituted sometime prior to 12 November 1970.

"By counterclaim the defendants allege[d] that in the prior action the plaintiff misstated the amount of the indebtedness there involved by $8,100.-00 with the result that the final judgment of foreclosure and the deficiency judgment were erroneous and obtained by a fraud on the court." 275 So.2d at 273.

In affirming the trial court's striking of this counterclaim, the District Court of Appeal stated:

"Without attempting a comprehensive definition of 'fraud on the court' it is our view that the facts alleged in the counterclaim do not qualify as such. In addition to the policy considerations mentioned above, these other factors move us to this conclusion: (a) the counterclaim does not allege a misrepresentation which misled the court (in the original action) as to its jurisdiction over the person of the defendant, the identification of the defendant, or the subject mat-

---

1. Rule 1.540(b), 31 F.S.A., Florida Rules of Civil Procedure:

*Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment or decree is void; (5) the judgment or decree has been satisfied, released or discharged or a prior judgment or decree upon which it is based has been reversed or otherwise vacated or it is no

longer equitable that the judgment or decree should have prospective application. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, decree, order or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or decree or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order or proceeding or to set aside a judgment or decree for fraud upon the court.

Writs of coram nobis, coram vobis, audita querela and bills of review and bills in the nature of a bill of review are abolished and the procedure for obtaining any relief from a judgment or decree shall be by motion as prescribed in these rules or by an independent action.

ter; and (b) neither does the counterclaim allege a misrepresentation which prevented the appellants from effectively presenting a defense in the original action based on the same facts they now desire to set before the court via the independent action. The 'fraud' to which the counterclaim speaks is in our view the type of fraud contemplated by subsection '(3)' of Rule 1.540(b), RCP, and should have been brought to the attention of the court by a motion filed in the original action—not by an independent action."

Alexander v. First National Bank of Titusville, *supra,* 275 So.2d at 274.

The same factors cited by the *Alexander* court are present here and require this Court, sitting as a Florida court, to refuse to entertain this action. *See also,* Simons v. Miami Beach First National Bank, *supra,* in which the court held that a husband's failure to disclose a prior New York separate maintenance decree in a Florida divorce action was not a fraud upon the court.

 Thus, the Court concludes that defendant's Florida judgment of divorce is a valid judgment of a court of competent jurisdiction.

The antenuptial agreement, as amended on June 15, 1959, included a provision that

> "*upon condition* that [plaintiff] survive [defendant] and upon further condition *that at the time of [defendant's] death the said parties have not been divorced* or separated *by decree of a court of competent jurisdiction,* or separated by written agreement,*" [emphasis added]

defendant was to bequeath to plaintiff a number of shares of Schenley stock equivalent to 25,000 shares issued and outstanding on November 29, 1956, or if defendant did not hold such shares at the time of his death, shares of stock received in exchange therefor, plus cash in an amount sufficient to make the value of the bequest not less than $450,000. The agreement further provided that if neither Schenley shares nor securities or other property received in exchange therefor were owned by defendant at the time of his death, then plaintiff would receive cash or other property or both valued at $450,000.

 Plaintiff argues that even though the Florida divorce be found to be a valid judgment by a court of competent jurisdiction, it does not serve to terminate her rights under the antenuptial agreement because the divorce was procured by defendant's fraud and in bad faith, specifically his failure to disclose to the Florida court the prior New York support proceeding. Assuming that such nondisclosure constituted fraud, it is inappropriate for this Court to grant plaintiff's request to set aside the defeasance clause. Plaintiff, by electing not to defend the Florida action, has waived her right to raise in another forum any non-jurisdictional issue in connection with the Florida action which she could have raised in the Florida proceeding, including defendant's possible fraud in obtaining the divorce which was the defeasible event. In effect, plaintiff still attempts to attack the judgment dissolving the marital *res* since there was no adjudication of any other rights by the Florida court which, in fact, did no more than dissolve the marriage. It is the validity of this divorce and nothing more which determines the continued effect of the antenuptial agreement.

To hold that plaintiff is entitled to enforcement of the antenuptial agreement because of fraud in the Florida proceeding, although she is barred from attacking the validity of that proceeding, would allow plaintiff to accomplish by indirection that which she is unable to achieve directly.

 Furthermore, this is not an appropriate case for application of the doctrine of "divisible divorce." Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). Except to dissolve the marriage, Florida did not adjudicate any rights of plaintiff in an action in

which she was not personally served and did not appear. Florida has not, nor did it attempt, to determine plaintiff's property rights. A determination of the contractual property rights asserted by plaintiff in this action is governed solely by the terms of the antenuptial agreement, a matter with which the Florida court was not concerned. The Florida decree does not divest plaintiff's property rights; it only determines the Rosenstiels' marital status. Stilwell v. Continental Ill. Nat. B & T of Chicago, 31 Ill.2d 546, 202 N.E.2d 477 (1964); Kovats v. Hobby, 132 F.Supp. 771 (S.D. N.Y.1955).

There is no doubt that a provision of an antenuptial agreement divesting a wife of rights in her husband's estate upon divorce or separation is valid and not violative of any public policy of the State of New York. Matter of Hart, 31 A.D.2d 548, 295 N.Y.S.2d 345 (2d Dep't 1968), appeal dismissed, 24 N.Y.2d 737, 299 N.Y.S.2d 1028, 247 N.E.2d 669 (1969); Benjamin v. Benjamin, 197 Misc. 618, 95 N.Y.S.2d 167 (Sup.Ct.N.Y.Co.), aff'd, 277 App.Div. 752, 97 N.Y.S.2d 196 (1950), aff'd, 302 N.Y. 560, 96 N.E.2d 618 (1951). Moreover, the public policy of New York permits the termination of such rights by an *ex parte* out-of-state divorce. EPTL 5–1.2(a)(1) (McKinney 1967) expressly denies a survivor any intestate distribution from a former spouse or the right to elect against a former spouse's will if a judgment of divorce "recognized as valid under the law of this state, was in effect when the deceased spouse died." The defeasance clause in the antenuptial agreement has precisely the same effect on plaintiff's contractual rights in defendant's estate as EPTL 5–1.2(a)(1) has on statutory inheritance rights. *See,* In re Adams' Will, 142 N.Y.S.2d 32 (Sur.Ct. Nassau Co. 1955); In re Dollinger's Will, 143 N.Y.S.2d 155 (Sur.Ct. Westchester Co. 1955).

Plaintiff further contends that the term "divorce . . . by decree of a court of competent jurisdiction" is ambiguous; that, therefore, parol evidence is admissible to explain it; and that given the subject and circumstances of the transaction, any ambiguities should be resolved in her favor. The Court finds no merit to this contention. Even if plaintiff did not herself comprehend the exact meaning of these words, she was represented by counsel of her own choosing. Her argument that her counsel did not adequately represent her interests is unsupported by the evidence. Nor is there support for her contention that this attorney was somehow in the employ of defendant because defendant paid for the lawyer's services and later sent him cases of whiskey.

Plaintiff also seeks damages for defendant's allegedly tortious course of continuing conduct toward her commencing with their marital discord in October, 1961, and continuing until the present, relying on a theory of intentional infliction of mental and emotional distress.

With respect to this claim, the Court finds that plaintiff and defendant ended their marital relationship in October, 1961 to the accompaniment of much heat and acrimony. Plaintiff has not carried her burden of proof that defendant threatened "to get rid of" her other than by a matrimonial action and to terminate their marriage in such manner as to leave plaintiff penniless.

There is no credible evidence that defendant deprived plaintiff of any of her rights under the antenuptial agreement or otherwise by threatening her at any time that he would use his alleged vast underworld connections to inflict physical harm upon her if she went to Florida to defend the divorce action there.

Defendant has not rendered plaintiff penniless. On the contrary, defendant has made all court-ordered support payments in the amount of $96,000 per year. Plaintiff's present financial condition is the result of her style of living, including her penchant for obtaining expensive luxury items for which she does not pay. Any decrease in the amount of support payments actually re-

ceived by plaintiff is the result of deductions on account of unsatisfied judgments.

 Nor has plaintiff established that defendant was made aware of any wrongdoing in Mexico by his then-attorney in seeking to invalidate plaintiff's Mexican divorce. There is no credible evidence of continued and continuous harassment in the form of surveillance of plaintiff by agents of defendant. The limited surveillance which took place was for a legitimate investigatory purpose within permissible limits under New York law. General Business Law § 71, subd. 1 (McKinney's Consol.Laws, c. 25, 1968); People v. Weiler, 179 N.Y. 46, 71 N.E. 462 (1904). Other alleged acts of harassment, except the institution of various legal proceedings, occurred in 1961 and are barred by the statute of limitations, C.P.L.R. § 214, subd. 5, McKinney's Consol.Laws, c. 308, since they give rise to several separate and distinct causes of action.

It is clear that at least since 1964 defendant has not intentionally inflicted emotional distress on plaintiff as such conduct is defined in that tort. There has been no evidence that defendant's conduct since 1964 was purely malicious, without justification, and unrelated to the legitimate enforcement of his legal rights. Restatement, Torts 2d § 46. Both parties clearly had the right to engage in legal proceedings. Therefore, the Court concludes that plaintiff has failed to establish that defendant's conduct is such that her tort claim will lie.

Since the doctrine of necessaries has no applicability to this action, Frooks v. Peck, 35 Misc.2d 177, 232 N.Y. S.2d 137 (Sup.Ct., App.Term, 1st Dep't 1962), any award of counsel fees is governed by Domestic Relations Law § 237 (McKinney 1964). Under this section, only plaintiff's challenge to the validity of the foreign *ex parte* divorce judgment and her action to enjoin the prosecution of a divorce in a foreign jurisdiction can form the basis for an award of counsel fees. This section makes such an award discretionary. The Court, in the exercise of its discretion, denies plaintiff counsel fees. Plaintiff has a substantial income, $96,000 per year, from the support payments that defendant makes to her. Moreover, these claims, although they cannot be denominated frivolous, had minimal merit. Under these circumstances, the Court considers an award of counsel fees to be unwarranted.

The foregoing constitutes the findings of fact and conclusions of law of the Court for the purposes of Rule 52, Fed.R. Civ.P.

Settle judgment on notice.