Frances ACKERMAN, Plaintiff,

v.

Martin S. ACKERMAN, Defendant.

No. 80 Civ. 7313.

United States District Court,
S. D. New York.

July 3, 1981.

award for legal fees incurred in the English action; damages for breaches in the Separation Agreement from December 1976 to the present; and costs and expenses (including attorney fees) in this action. The suit was filed in New York County Supreme Court on December 15, 1980, and defendant removed it to this court on December 22, 1980 on the basis of diversity of citizenship.

Defendant has moved for summary judgment on plaintiff's claims for enforcement of the English judgment, for counsel fees in that action, and for damages based on alleged violations of the property settlement that occurred both prior to and after the dismissal by plaintiff of a California action for breach of the Separation Agreement. Defendant asserts that all of these claims are barred by the doctrine of res judicata. Plaintiff, too, has moved for summary judgment, on the count that seeks enforcement of the English judgment.

Defendant is not entitled to summary judgment, for he has failed to establish that the California dismissal would be deemed res judicata in California or New York. In any event, plaintiff is correct in contending that the English judgment is entitled to overriding recognition, and she is therefore entitled to summary judgment on that portion of her complaint.

Plaintiff and defendant were married on July 4, 1954 in Brooklyn, New York. Thereafter, they lived in Nassau County and had three children. The parties separated in 1970 and entered into a Separation Agreement on March 5, 1971. The Separation Agreement was subsequently incorporated, but not merged, into a Judgment of Divorce rendered by the New York Supreme Court in Nassau County on June 18, 1971. *See* Defendant's Exhibits 1, 2 [hereinafter cited as "Def. Ex. (number)"].

In 1972, plaintiff sued defendant in the New York County Supreme Court for breaches of the Separation Agreement—specifically, of ¶ 7, for the value of a new automobile, ¶ 4, for expenses of the parties' children, and ¶ 18, for attorney fees. Def.

Szold & Brandwen, P. C., New York City, for plaintiff by David N. Kaye, New York City.

Layton & Sherman, New York City, for defendant by Frederick E. Sherman, New York City.

SOFAER, District Judge.

Plaintiff Frances Ackerman has brought this action against her former husband, Martin S. Ackerman, for enforcement of a judgment of $1,097,250, entered on July 1, 1980 by the English High Court of Justice, Queen's Bench Division, for defendant's breaches of a Separation Agreement from 1971 through 1976. Plaintiff also seeks an

Ex. 3. The action was settled by a stipulation entered on the record in open court on June 12, 1973, pursuant to which defendant was required to pay certain sums to plaintiff. Defendant failed to pay these sums, however, and on June 11, 1975, judgment was entered in favor of plaintiff for $4,870.34. Def. Ex. 4.

In March 1975, plaintiff filed a second suit in New York Supreme Court against defendant for additional breaches of the Separation Agreement that occurred after the 1973 Stipulation of Settlement. She alleged breaches of ¶ 10, for monthly support payments to the plaintiff totalling $3,750, ¶ 5, for medical and dental expenses, ¶ 4, for child-rearing expenses, and ¶¶ 9 and 18, for attorney fees. Def. Ex. 5. The action was in the form of a motion for summary judgment in lieu of complaint, but because it did not seek solely monetary relief, the court denied the motion on June 25, 1975. Def. Ex. 6. The action remained on the docket for another two years, but was not prosecuted—apparently because Mr. Ackerman left the United States.

In July 1975, a month after the entry of judgment for plaintiff in the first New York action, plaintiff's attorneys sought to enforce the judgment by serving a subpoena duces tecum on defendant in order to obtain information concerning his assets. Defendant succeeded in quashing the subpoena on the ground, inter alia, that he had been a resident of London since September 1974.

Plaintiff was advised by her New York attorneys in late 1975 that, although they could not locate any of defendant's assets in New York, a detective had found that defendant owned lien-free real property in California worth $120,000. Plaintiff thereupon commenced a quasi-in-rem action against defendant in the Los Angeles County Superior Court. The complaint, filed on March 10, 1976, sought to enforce the judgment for $4,870.34 entered in the first New York action, and to recover approximately $45,000 in damages for defendant's breaches of his support obligations pursuant to

¶¶ 4, 5, 7, and 10 of the Separation Agreement. Def. Ex. 7.

Plaintiff's attorney learned in July 1976 that defendant had practically no equity in the California property; defendant had defaulted on $36,000 of a $50,000 mortgage on the property. Plaintiff declined defendant's offer of $500 to $750 to relinquish her entire claim. In response to plaintiff's California attorney's request for an answer to the complaint, defendant's California counsel stated in September 1976 that defendant did not intend to defend the action, to appear voluntarily, or to file a responsive pleading.

Plaintiff's New York attorneys then recommended that plaintiff bring suit in London, where defendant was living. Plaintiff's father, acting on her behalf, instructed her California attorney on October 6, 1976 to discontinue the California action because plaintiff would attempt to prosecute the action in England. Plaintiff's California counsel did not, however, follow the father's instructions. Plaintiff's father repeated his instructions in November and again in January. Nevertheless, plaintiff's attorney failed to dismiss the action.

Plaintiff filed suit in the High Court of Justice, Queen's Bench Division, in London on December 22, 1976. Def. Ex. 8. This action, like the second New York action and the quasi-in-rem California action, sought recovery for defendant's breaches of ¶¶ 4, 7, and 10 of the Separation Agreement, relating to support obligations and amounts that had accrued since the filing of the California suit. In addition, plaintiff sought to collect unpaid amounts due under ¶ 9 of the Agreement, which required the defendant to pay $950,000 in settlement of plaintiff's estate and property rights.

Defendant was served in London by plaintiff's English solicitors with a writ and statement of claim on December 29, 1976. On January 11, 1977—four months after defendant's California counsel informed plaintiff's attorney that defendant would not appear or defend the suit, and three months after the statutory time for answer-

ing the complaint [1]—defendant voluntarily appeared in the California action, filed an answer generally denying the allegations, and filed a cross-complaint requesting the California court to enjoin the plaintiff from prosecuting the dormant New York and English actions. Def. Ex. 9, 10. On January 25, 1977, defendant applied to the English court for a dismissal or stay of the English action because of the pendency of the California and New York actions.

Plaintiff's California attorney then suggested to defendant's attorneys that the parties terminate the California action without prejudice. Defendant's attorneys refused to agree. On February 11, 1977, plaintiff's California counsel filed a request for dismissal on a form prescribed by the California Judicial Council, checking the boxes for dismissal of the "entire action," "with prejudice." Def. Ex. 13. Plaintiff insists that her attorney did not obtain permission from her or her father to dismiss the action with prejudice and that he did not inform them of his action. Shortly thereafter, defendant's California attorneys filed a dismissal form, requesting dismissal of the "cross complaint only," "without prejudice." The court clerk failed to stamp the date of submission on the form. *Id.*

The court clerk did not indicate on the form submitted by plaintiff the disposition of her attorney's request. The portion of the form that is to be completed by the clerk appears to have been filled-in, whited-out, and then crossed-out by hand. The word "over" and the number "1" are written in the crossed-out portion at the bottom of the page, and the reverse side of the form is blank. On the form submitted by defendant, the number "2" is written at the bottom of the page, and the portion that is to be completed by the clerk has been marked "dismissal entered as requested on" and stamped "February 14, 1977." Defendant's form is signed by a deputy clerk. The clerk may have meant to combine the two requests for dismissal and to dismiss the en-

tire action without prejudice. The numbers "1" and "2" on the bottom of the pages suggest that the clerk meant to combine the two documents, and the portion crossed-out on the page marked "1" may have been obliterated because the action taken on the page marked "2" rendered a disposition of plaintiff's request unnecessary.

In May 1977, plaintiff's New York attorney moved to dismiss the then-pending, second New York action without prejudice; defendant moved for dismissal with prejudice on the ground that the California action was res judicata. The New York Supreme Court granted plaintiff's motion and denied defendant's cross-motion on July 12, 1977. Def. Ex. 15. Defendant appealed, and the Appellate Division (First Department) affirmed, stating that:

> [it appears] that the only use that the defendant can have of a determination from us that the California action is *res judicata* of any other action on the same claim is that defendant will then be able to argue in the English court that a New York court has said that the California action is a judgment on the merits. This is unnecessary. One judgment on the merits is all that is necessary to protect the parties' rights.

*Ackerman v. Ackerman*, 60 A.D.2d 520, 521, 399 N.Y.S.2d 682, 683 (1977).

Defendant's application for dismissal or stay of the English action, on the ground that the California action was res judicata, was dismissed by an English master on February 13, 1978. On May 9, 1978, defendant's appeal of that order was rejected by the High Court of Justice, Queen's Bench Division, which also rejected defendant's arguments that England was an inappropriate forum in which to try the case. Def. Ex. 16. On November 2, 1978, defendant entered the defense that the California action barred plaintiff's recovery. Defendant also filed a counterclaim for recision of the Separation Agreement. Defendant then

---

1. Section 412.20(a)(3) of the California Code of Civil Procedure provides that the summons contain a direction that defendant answer within thirty days. Section 428.50 provides that a cross-complaint not served before, or at the same time as, the answer may only be filed with leave of court.

moved back to the United States, but continued to defend the suit.

The English court tried the case between June 23 and July 1, 1980; the sole issue was whether the California action barred plaintiff's claims. Justice Boreham noted that the Separation Agreement was governed by New York law, "that one applies the law of New York by applying California law," and that the law of England, as the forum, governed the res judicata issue. Plaintiff's Exhibit C at 13 [hereinafter cited as "P. Ex. (letter)"]. The judge determined the effect of the California dismissal upon plaintiff's claims, first under California law and then under English law. He examined relevant California statutes and case law and consulted two California law professors as experts for each party on the effect of the California dismissal. Justice Boreham concluded that he was "far from being satisfied that the California court would find [the California dismissal to be] a final adjudication," and that, even if a California Court were to find that the dismissal was a final adjudication, it nevertheless might apply the California exception to res judicata. He also held that an English court would not find the California dismissal to be a final adjudication. P. Ex. C at 27–29, 33–35. He concluded that plaintiff was entitled to the award of an amount previously agreed to by counsel for the parties ($1,097,250 plus costs). *Id.* at 43. Justice Boreham dismissed defendant's counterclaim for recision of the Separation Agreement. *Id.* Judgment in favor of plaintiff and against defendant, in the sum of $1,097,250, plus plaintiff's costs, was duly entered on July 1, 1980 and filed in the Central Office of the Supreme Court of Judicature in London. P. Ex. E. Defendant appealed that decision, but because he failed to post the required bond for cost, the appeal was dismissed on November 18, 1980. P. Ex. F.

**2.** Defendant in this case failed to submit the statements in support of his motion, and in opposition to plaintiff's motion, required by Local Rule 3(g). Plaintiff's Rule 3(g) statement

I. *Defendant's Motion for Summary Judgment: Effect of the California Dismissal*

Defendant's motion for summary judgment is based on the assertion that most of the present action is barred due to the res judicata effect of the California dismissal. A determination on this issue is necessary despite this Court's decision that plaintiff is entitled to summary judgment enforcing the English judgment, because it helps to clarify the issues that were before the English court, and because some aspects of defendant's motion survive a grant of summary judgment to plaintiff.

California law must be applied to determine the res judicata effect of the dismissal with prejudice in the California courts, and under the Full Faith and Credit Clause of the Constitution, New York law must be applied to determine the dismissal's effect in the New York courts. Defendant has the burden of proving that no genuine issue of material fact exists with regard to the res judicata effect in New York of the California dismissal and that he is entitled to summary judgment as a matter of law.[2] Moreover,

> a motion for summary judgment on the basis of a prior judgment should be denied if ... there is a genuine issue of material fact as to the validity of the prior judgment, its scope and coverage, privity, or whether it was on the merits so that it is controlling in the case at bar.

6 *Moore's Federal Practice* ¶ 56.17[52] (2d ed. 1980) (citations omitted).

Defendant contends that the California dismissal is res judicata and that plaintiff is estopped from questioning its validity because she failed to do so in California and has benefited from that failure. Plaintiff argues that the California dismissal is void and has no res judicata effect; alternatively, she argues that the dismissal is not entitled to full faith and credit in this Court.

in support of her motion for summary judgment, therefore, is taken as admitted by the defendant.

## A. Effect of the Dismissal under California Law

There are three conceivable grounds for concluding that the California dismissal may not be entitled to res judicata effect in this lawsuit: (1) the dismissal was made by plaintiff's attorney in contravention of instructions to dismiss without prejudice; (2) the entry of the dismissal by a clerk may have been beyond his statutory authority; and (3) the California doctrine of equitable relief from dismissal may operate in this case. The effect of the California dismissal is a novel question. None of the reported decisions involves the particular combination of circumstances present here, and it is difficult to predict how either the California or New York courts would decide this case. Nevertheless, it is clear that plaintiff has raised a genuine issue of material fact with regard to the validity, scope, coverage, and controlling effect of the California "judgment," and defendant's motion for summary judgment must accordingly be denied.

### 1. Unauthorized Acts of Counsel

 Actions by counsel that compromise a client's claim, taken without specific authority to do so, are null and void in California.

> [An attorney] has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action.... Without his client's free and intelligent consent, after full knowledge of all the facts and circumstances, an attorney may not surrender any substantial right of his client; nor may he impair, compromise, or destroy his client's cause of action.

*Bice v. Stevens*, 160 Cal.App.2d 222, 325 P.2d 244, 250 (1958) (citations omitted). Noting that plaintiffs were "deprived of their day in court to litigate their claim on the merits," the court stated in *Bice* that:

> [t]he policy of the law is to have every litigated case tried on its merits; and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of mistake, sur-

prise, inadvertence, or neglect of his adversary.

*Id.* at 251. *See Navrides v. Zurich Insurance Co.*, 5 Cal.3d 698, 97 Cal.Rptr. 309, 488 P.2d 637 (1971); *Roscoe Moss Co. v. Roggero*, 246 Cal.App.2d 781, 54 Cal.Rptr. 911 (1966). On the other hand, "[w]hen nothing more than client misunderstanding or client change of heart is involved, the propriety of [vacating the dismissal of the case] is doubtful," and "obviously such action requires strong and convincing proof, and the longer the delay in application for relief, the stronger and more convincing the factual proof should be." *Whittier Union High School District v. Superior Court*, 66 Cal. App.3d 504, 136 Cal.Rptr. 86, 89–90 (1977). The California Supreme Court has held that, when an unauthorized action by an attorney is attacked collaterally, "[t]here is a rebuttable presumption that [the attorney] had such authority [to surrender his client's rights]." *Gagnon Co. v. Nevada Desert Inn, Inc.*, 45 Cal.2d 448, 289 P.2d 466, 475 (1955). *See Linsk v. Linsk*, 70 Cal.2d 272, 74 Cal.Rptr. 544, 449 P.2d 760 (1969).

Plaintiff in this case has presented uncontroverted evidence that her California attorney was not authorized to dismiss her suit with prejudice. Affidavits of plaintiff, her California attorney, and her father together demonstrate that the California attorney—knowing that plaintiff planned to sue defendant on the same claims in England—failed to follow plaintiff's instructions to dismiss the quasi-in-rem action before defendant filed an answer, at which time the dismissal would in no way have compromised plaintiff's claims. Furthermore, plaintiff's California attorney did not inform plaintiff that he had later dismissed the case with prejudice, thereby jeopardizing her right to sue on the claims elsewhere.

The California decisions that have voided unauthorized compromises of a party's claims differ somewhat from this case. In those cases, the attorney's lack of authority has been absolutely clear and the attorney's conduct has been more egregious. Here, plaintiff at least gave her California attorney the authority to discontinue the action

before an answer was filed, and she did not specifically instruct the attorney that he should only dismiss the case if he could do so without prejudice. Plaintiff's desire to avoid a dismissal with prejudice, however, should have been inferred by her attorney. The repeated instructions to dismiss were given prior to the filing of an answer, after plaintiff had discovered that defendant's real estate in California was worth less than she had hoped, and after she had commenced a suit in England to obtain relief on the same grounds upon which the California suit had been filed.

■ Plaintiff has not attempted to vacate the California dismissal, but this does not appear to be a case of misunderstanding or change-of-heart on her part. She is entitled to argue that the dismissal was unauthorized, and the evidence presented in opposition to defendant's motion for summary judgment establishes that she is probably correct. At the very least, plaintiff has raised an issue of fact with regard to the validity of the California judgment that bars a grant of summary judgment to defendant.

### 2. Unauthorized Acts of the Clerk of the Court

Plaintiff has raised a second issue of fact regarding the California dismissal. She argues that, although section 581d of the California Code of Civil Procedure provides that a clerk's dismissal of an action is "effective for all purposes when ... entered" in compliance with the statutory authority, the dismissal of her California action with prejudice does not have a res judicata effect under California law because the clerk acted beyond his statutory authority when he gave amended effect to her attorney's request for dismissal. In particular, plaintiff argues that because the clerk erred in combining plaintiff's attorney's request for dismissal with the defendant's request, the dismissal of plaintiff's claim with prejudice

was irregular and not in strict compliance with the statute.

■ In cases involving defaults entered by the clerk under section 585(1) of the California Code of Civil Procedure,[3] California courts have repeatedly held that if the clerk "exceeds the limited power conferred upon him by the statute, there is an entire absence of jurisdiction and his action ... is a nullity and open to attack at any time." *Lewis v. Le Baron*, 254 Cal.App.2d 270, 61 Cal.Rptr. 903, 908 (1967) (quoting *Baird v. Smith*, 216 Cal. 408, 14 P.2d 749, 751 (1932)). *Accord, Crofton v. Young*, 48 Cal.App.2d 452, 119 P.2d 1003 (1941). Moreover, unlike voidable judgments, which may be voided on a party's motion within six months, Cal. Code Civ.Proc. § 473 (West), a void judgment is "a dead limb upon the judicial tree" and "may be lopped off at any time." *Baird v. Smith, supra*, 14 P.2d at 750.

In *Riley v. Superior Court*, 111 Cal. App.2d 365, 244 P.2d 474 (1952), the court applied the reasoning of *Baird* to a voluntary dismissal under section 581 of the California Code of Civil Procedure. It upheld the lower court's ruling, made on defendant's motion, setting aside a dismissal without prejudice entered after the defendant sought affirmative relief. The court stated that:

> The county clerk, in entering the order for dismissal, acts in a mere ministerial capacity and exercises no judicial function. In exercising the power conferred, he is required to conform strictly to the provisions of the statute or his proceedings will be without binding force and any judgment entered by him will be void.

*Id.* at 475. In addition, California decisions have held that a voluntary dismissal entered by a clerk is presumed to be without prejudice to the commencement of another action. *Lynch v. Bencini*, 17 Cal.2d 521, 110 P.2d 662 (1941); *Lewis v. Johnson*, 12 Cal.2d 558, 86 P.2d 99 (1939).

**3.** That section provides, in relevant part, that to effect a default judgment, a plaintiff may file a written application with the clerk of the court and "the clerk ... shall enter the default of the defendants ... and immediately thereafter enter judgment ...." Cal.Code Civ.Proc. (West) § 585(1).

Void default judgments are not entitled to res judicata effect. *Looper v. Looper*, 222 Cal.App.2d 247, 34 Cal.Rptr. 912 (1963), held that a default judgment that extended beyond the scope of the complaint was void and not res judicata in a subsequent action. The court noted that the "statutes are very specific in their requirements for a judgment following a default . . . ." *Id.*, 34 Cal.Rptr. at 915. *Cf. De Rasmo v. Smith*, 15 Cal.App.3d 601, 93 Cal. Rptr. 289 (1971) (prior foreign conviction found void, because of lack of counsel, in subsequent civil action on different facts).

Defendant argues that the clerk did nothing that was irregular or unauthorized. He submits an affidavit from Joseph White of the Clerk's Office in the California Superior Court that states that what was done in the Ackerman case is "consistent with the regular and normal course of practice" in that office. Def. Ex. 14 at 2. In addition, defendant cites two groups of appellate decisions in support of his argument that a California court would hold the clerk's dismissal of plaintiff's suit to be res judicata.

In the first group of cases submitted by defendant, each plaintiff had moved for dismissal without prejudice, on either the complaint or a counterclaim, after the trial had started. The trial courts granted the dismissals without prejudice, in contravention of section 581 of the California Code of Civil Procedure. In each case, the Appellate Court reversed, holding that dismissals "without prejudice" will be deemed "with prejudice" under these circumstances. *Hehr v. Swendseid*, 243 Cal.App.2d 142, 52 Cal.Rptr. 107 (1966); *Carvel v. Arents*, 126 Cal.App.2d 776, 272 P.2d 858 (1954); *Fisher v. Eckert*, 94 Cal.App.2d 890, 212 P.2d 64 (1949). But, as one California court noted, each of these cases must be limited to its facts: in all three, the defendants immediately objected to plaintiffs' dismissals "without prejudice." *Appelgate v. Wilson*, 156 Cal.App.2d 330, 319 P.2d 401, 405 (1957). In the second group of cases cited by defendant, the California courts upheld dismissals with prejudice as a bar to further litigation when the dismissal resulted from a settlement between the parties and a release in return for consideration. *Douglas v. Los Angeles Herald-Examiner*, 50 Cal. App.3d 449, 123 Cal.Rptr. 683 (1975); *Wouldridge v. Burns*, 265 Cal.App.2d 82, 71 Cal. Rptr. 394 (1968).

These groups of cases demonstrate that the California courts require strict compliance with the state's code of civil procedure, disfavor attorney abandonment of an action mid-trial, and uphold settlements as having a res judicata effect. The cases are not, however, dispositive of the question of how the California courts would decide the effect of a dismissal like the one entered in plaintiff's California suit.

### 3. The Doctrine of Equitable Relief

Defendant's argument that he is entitled to summary judgment because of the res judicata effect of plaintiff's dismissal of the California action is further undermined by the California Supreme Court's doctrine of equitable relief from res judicata. In *Greenfield v. Mather*, 32 Cal.2d 23, 194 P.2d 1 (1948), that court held that:

> in a rare case a judgment may not be res judicata when proper consideration is given to the policy underlying the doctrine, and there are rare instances in which it is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy.

*Id.*, 194 P.2d at 8. Although the court expressed some doubt as to the validity of that doctrine in *Slater v. Blackwood*, 15 Cal.3d 791, 126 Cal.Rptr. 225, 543 P.2d 593 (1975), the doctrine continues to be applied, particularly in marital actions. For example, in *Hight v. Hight*, 67 Cal.App.3d 498, 136 Cal.Rptr. 685 (1977), the court did not invoke res judicata, because it was obvious that plaintiff's attorney had not adequately represented his client's interests. In *Jackson v. Jackson*, 253 Cal.App.2d 1026, 62 Cal. Rptr. 121 (1967), a case involving a marital property-settlement agreement, the California Court of Appeals, noting the absence of pleadings or evidence on the types of issues claimed to have been adjudicated in the *Greenfield* decision, stated:

"The rule of *res judicata* is to prevent vexatious litigation and to require the parties to rest upon one decision in their controversy . . . ." It is obvious that the application of the rule to this case will subvert the purpose of the doctrine. It will prolong and extend the litigation between the parties and cause wasted effort and expense in judicial administration.

*Id.*, 62 Cal.Rptr. at 129 (quoting *Miller & Lux, Inc. v. James*, 180 Cal. 38, 179 P. 174, 177 (1919)). If the California courts are to apply the *Greenfield* doctrine in any case, it is likely that they would apply it here, given that defendant filed an answer after the statutory time limit (apparently for the sole purpose of avoiding litigation in England), that the dismissal was brought about by an attorney who acted without authority, and that the dismissal was filed by a court clerk who may have acted without authority. As the English court properly observed, application of res judicata here "would mean that the Plaintiff would never have had her opportunity to litigate and that all her remedies under an apparently handsome agreement would be barred everywhere and for ever." P. Ex. C at 37.

### B. *Estoppel*

■ Defendant also argues that, because plaintiff did not return to California within six months in order to attempt to vacate the dismissal under section 473 of the California Code of Civil Procedure, did not move to strike defendant's late cross-claim or motion for a dismissal without prejudice, and used the "dismissal with prejudice" to gain favorable treatment in England, she is now estopped from raising the issue of dismissal with prejudice. California law is clear, however, that void judgments need not be undone within a particular time, but rather are never effective for purposes of res judicata. *See* p. 621. In addition, the record does not support defendant's claim that plaintiff has benefited from the dismissal. Plaintiff argued vigorously in the English court against giving effect to the dismissal with prejudice, and the English court's denial of defendant's pretrial motion makes clear that the English court did not rest its jurisdiction on the California dismissal; plaintiff therefore did not derive any benefit from that dismissal. The English court noted that "[i]t appears that the 'res judicata' argument is likely to be resolved in favour of the Plaintiff," Def. Ex. 16 at 5, and it granted plaintiff's claims in spite of the "dismissal with prejudice."

### C. *Effect of the Dismissal Under New York Law*

Defendant has not shown that the California dismissal with prejudice would necessarily be entitled to full faith and credit in New York. Article IV, section 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Not all judgments rendered in a sister state are given full faith and credit in New York's courts, however, because not all are considered the product of judicial proceedings. "New York would characterize the proceedings had . . . in order to ascertain whether what purports to be a sister state 'judgment' is a 'judicial proceeding' within the meaning of the Constitution." *American Fidelity Fire Insurance Co. v. Paste-Ups Unlimited, Inc.*, 368 F.Supp. 219, 225 (S.D.N.Y.1974). New York courts have frequently characterized a purported foreign judgment as something other than a judicial act and thus refused to accord it full faith and credit. *Id.* at 225 n.5.

In *Atlas Credit Corp. v. Ezrine*, 25 N.Y.2d 219, 303 N.Y.S.2d 382, 250 N.E.2d 474 (1969), for example, the New York Court of Appeals refused to accord full faith and credit to a cognovit judgment entered on warrant of attorney as a result of proceedings before a court clerk whose duties were purely ministerial. The court noted that the proceedings to enter a cognovit judgment "do not involve the exercise of discretion or judgment usually associated with judicial proceedings," 25 N.Y.2d at 230, 303 N.Y.S.2d 382, 250 N.E.2d 474, and quoted the definition of "judgment" in 1 *Black, Judgments* § 1 as "the *determination* . . .

*pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court,* affirming that, upon the matters submitted for its decision, a legal liability does or does not exist." *Id.* (emphasis added). This doctrine was construed in *American Fidelity Fire Insurance Co. v. Paste-Ups Unlimited, Inc., supra,* as follows:

> At a minimum, New York requires a formal decision rendered in a controversy where the parties have been given notice of the proceedings with an opportunity to be heard; the exercise of discretion or judgment; and something more than merely "the act of the law invoked by the parties, in executing [their] agreement."

368 F.Supp. at 255. *See* Weinstein, Korn & Miller, 5 *New York Civil Practice* ¶ 5011.19, at 50–110 n.123 (1979) (cognovit judgments are not judgments within the full faith and credit clause because they "never evidenced a judicial act ...").

New York courts have also denied full faith and credit to a sister state's revocation of a driver's license, despite the fact that a New York statute mandates a corresponding revocation in New York, on the grounds that the sister state's revocation statute was "substantially different from New York's," that there was a "clear inconsistency" between that statute and "the mis-information or non-information given petitioner by the local court," and that there was "a flaw or inconsistency or ambiguity in the foreign judgment." *Henry v. Tofany,* 76 Misc.2d 330, 332, 350 N.Y.S.2d 298, 300 (Sup.Ct.1973). *But cf. Signorile v. Sullivan,* 52 Misc.2d 17, 274 N.Y.S.2d 639 (Sup. Ct.1966) (full faith and credit given involuntary dismissal under a Delaware statute, on defendant's motion, for failure to prosecute).

■ New York's courts have not specifically ruled on whether a dismissal with prejudice that is entered by a clerk, not in strict compliance with the governing statute, is entitled to full faith and credit as a judicial proceeding. It seems reasonably clear that, under New York law, a dismissal with prejudice would not have been entered in a situation like that which occurred in plaintiff's California suit. Section 3217(a)(2) of the New York Civil Practice Law and Rules provides that voluntary discontinuance after a responsive pleading has been served can be effected "by filing with the clerk of the court before the case has been submitted to the court or jury a stipulation in writing signed by the attorneys of record for all parties ...." The statute further provides that, "[e]xcept as provided in subdivision (a), an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper." N.Y. C.P.L.R. § 3217(b) (McKinney). "Unless otherwise stated in the notice, [a] stipulation or order of discontinuance [in New York] ... is without prejudice ...." *Id.* § 3217(c). Given these policies—and the fact that no California judge ever ruled on the dismissal and that it resulted automatically from the arguably unauthorized actions of an attorney and court clerk—New York Courts would probably not accord full faith and credit to the California dismissal.

## II. *Plaintiff's Motion for Summary Judgment: Effect of the English Judgment*

■ Plaintiff is entitled to summary judgment on the basis of the judgment entered on her behalf in the English courts. Even if the California dismissal were res judicata under California law and entitled to full faith and credit under New York law, it would be superceded by the English judgment, which must be enforced pursuant to the principles of comity and the New York last-in-time rule. As Judge Gagliardi recently observed:

> New York distinguishes between judgments rendered by her sister states, to which it is constitutionally obligated to give full faith and credit, and those rendered by foreign countries, which it will recognize only as a matter of comity. Nevertheless, a foreign judgment when sued upon in New York normally precludes a retrial upon the merits unless the judgment is tainted with fraud or with

an offense against public policy or the foreign court had no jurisdiction over the person of the defendant or of the subject matter of the action. . . .

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce and Metals) Co.,* 470 F.Supp. 610, 615 (S.D.N.Y.1979).

Under New York case law, a foreign judgment will generally be granted the same credit as one rendered by a sister state. *E. g., Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970); *Schoenbrod v. Siegler,* 20 N.Y.2d 403, 283 N.Y.S.2d 881, 230 N.E.2d 638 (1967); *International Firearms Co. v. Kingston Trust Co.,* 6 N.Y.2d 406, 189 N.Y. S.2d 911, 160 N.E.2d 656 (1959); *Neporany v. Kir,* 5 A.D.2d 438, 173 N.Y.S.2d 146 (1958); *Cowans v. Ticonderoga Pulp & Paper Co.,* 219 A.D. 120, 219 N.Y.S. 284, *aff'd mem.,* 246 N.Y. 603, 159 N.E. 669 (1927); *see Clarkson Co. v. Shaheen,* 544 F.2d 624 (2d Cir. 1976) (New York's policy of enforcing foreign judgments applies strongly in marital actions); *Fabrikant v. Fabrikant,* 19 N.Y.2d 154, 278 N.Y.S.2d 607, 225 N.E.2d 202 (1969); *Rosenstiel v. Rosenstiel,* 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965); *Rosenbaum v. Rosenbaum,* 309 N.Y. 371, 130 N.E.2d 902 (1955).

In 1970, New York adopted the Uniform Foreign Money Judgments Recognition Act, N.Y. C.P.L.R. §§ 5301–5309 (McKinney), which requires that foreign money judgments be recognized unless (1) the judgment was not rendered by an impartial tribunal or pursuant to procedures compatible with due process of law; (2) the court did not have personal jurisdiction over the defendant; or (3) the New York court determines that the judgment should not be enforced on any of seven specified discretionary grounds. *Id.* § 5304(b). The Act does not apply to "a judgment for support in matrimonial or family matters," *id.* § 5301(b)—an exclusion that, as the commentary notes, is "designed to acknowledge their unique status and treatment and leave them to the existing law which is . . . quite generous in New York." Siegel, Practice Commentary C5301:1, 7B McKinney's Con-

solidated Laws of New York Annotated §§ 5101–5500, at 486. Although the instant action is for breach of a contract (the Separation Agreement), not for marital support, the exception reflects a state policy that must be considered in this case. The Court of Appeals for the Second Circuit has noted that the exceptions to the enforcement of foreign money judgments "are construed narrowly when the alien jurisdiction is, like Canada, a sister common law jurisdiction with procedures akin to our own." *Clarkson Co. v. Shaheen, supra,* 544 F.2d at 629–30. The practice commentary to the statute characterizes the grounds for non-recognition as:

> in the aggregate probably broader than the grounds New York would invoke under its case law built around the "comity" doctrine—the doctrine which guides recognition of sovereign nations' judgments when statutory instructions are absent. . . . New York has been—and continues to be [generous] despite what may be described as the "opportunities" C.P. L.R. § 5304 offers to be less generous—in the recognition of the judgments of foreign nations.

Siegel, Practice Commentary, *supra,* C5304:1, at 492 (citations omitted). The Judicial Conference's Eighth Report to the Legislature on Civil Practice Law and Rules, January 3, 1970, explained that "New York's standards of recognition are even more liberal than those prescribed by the Uniform Act. The liberal tendency of New York courts in respect to recognition of foreign country judgments is reflected in a long line of cases." McKinney's 1970 Session Laws of N.Y. 2777, 2784.

One of the exceptions to the Uniform Foreign Money Judgments Recognition Act provides that "[a] foreign country judgment need not be recognized if . . . the judgment conflicts with another final and conclusive judgment. . . ." N.Y. C.P.L.R. § 5304(b)(5) (McKinney). The commentary explains that the statute contemplates a "final and conclusive judgment," preceding the foreign judgment, before the foreign judgment may be disregarded on this ground.

"A refusal to recognize a foreign judgment because it conflicts 'with another final and conclusive judgment', . . . should only occur when some equity is shown why the latter judgment should have priority." The commentary construes the exception as an application of the last-in-time rule, which governs the conflict between two sister-state judgments under the full faith and credit clause:

> [T]he first judgment in time must be recognized in a second action involving the same parties and cause. But if the second court refuses the first judgment its deserved recognition, a third court must nonetheless honor the second court's judgment. The reason is that the second court's error in refusing recognition to court one should have been corrected by appeal in the second forum, not by collateral attack in yet a third forum. *See Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44 [84 L.Ed. 85] (1939).

Siegel, Practice Commentary, *supra*, C5304:1, at 494.

Even prior to the adoption of the Uniform Foreign Money Judgments Recognition Act, New York courts applied this last-in-time rule to conflicts between two foreign judgments, *Ambatielos v. Foundation Co.*, 203 Misc. 470, 116 N.Y.S.2d 641 (Sup.Ct. 1952), and to conflicts between an American judgment and a subsequent foreign judgment, *Perkins v. DeWitt*, 279 A.D. 903, 111 N.Y.S.2d 752 (1952). The rationale for the rule was explained in *Ambatielos v. Foundation Co., supra*:

> [when] the party against whom enforcement is sought had full opportunity in the second action to argue the binding force of the earlier judgment, there is every reason for applying the rule [that the last judgment in time prevails] to inconsistent judgments rendered by the tribunals of foreign nations.

213 Misc. at 476, 116 N.Y.S.2d at 648.

These New York decisions have been the subject of scholarly criticism. Professor (now Circuit Judge) Ruth Bader Ginsburg argues that "justification for the rule depends on both the full faith and credit obligation of the second state, and the availability of an impartial tribunal to correct the second state's error, should it fail to give the first judgment the respect constitutionally due it." Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-In-Time Rule for Conflicting Judgments*, 82 Harv.L.Rev. 799, 831–32 (1966). Professor Ginsburg points out that in conflicts between the judgments of sister states, the United States Supreme Court is an impartial tribunal, but that, by contrast, no appeal lies to a neutral arbiter in conflicts involving foreign states. *Id.* at 805. *See also* Smit, *International Res Judicata and Collateral Estoppel in the United States*, 9 U.C.L.A.L.Rev. 44, 46 n.13 (1962).

The defendant in this case relies upon both Professor Ginsburg's argument and a single California appeals court decision applying the foreign money judgments statute exception for "conflict with a final and conclusive judgment." In *Pentz v. Kuppinger*, 31 Cal.App.3d 590, 107 Cal.Rptr. 540 (1973), the California court refused to enforce a Mexican judgment that conflicted with an earlier California judgment, in large part because of evidence of extrinsic fraud. Defendant in this case argues that this Court, as the third forum, should decide whether the first judgment is entitled to res judicata effect.

Professor Ginsburg's proposals, however reasonable, are not the law under either the Uniform Foreign Money Judgments Act or New York case law. A study prepared for the New York State Judicial Conference prior to the adoption of Article 53 expressly stated that C.P.L.R. § 5304(b)(5) would not alter the *Perkins* and *Ambiatelos* results. 13 New York State Judicial Conference Reports 194, 215 (Leg. Doc. No. 9 (1968)). Moreover, the Supreme Court's decision in *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939), clearly indicates that the proper remedy for the losing party in the second forum is to appeal in that forum; in enunciating the last-in-time rule, the Court stated that "[o]ne trial of an issue is enough." *Id.* at 78, 60 S.Ct. at 51. Precisely the same reasoning

was invoked by the Appellate Division in the instant case, *Ackerman v. Ackerman, supra,* when it responded to defendant's argument that the court should give res judicata effect to the California dismissal: "One judgment on the merits is all that is necessary to protect the parties' rights. Whichever court plaintiff sues defendant in can and should decide whether the California judgment is a bar." 60 A.D.2d at 521, 399 N.Y.S.2d at 683–84 (citation omitted). In *Eyber v. Dominion National Bank,* 249 F.Supp. 531, 534 (W.D.Va.1966), the court, citing *Treinies,* stated that the reason for the rule that the latest of two inconsistent judgments is binding and conclusive in other courts is that "a plaintiff's proper remedy is an appeal rather than a collateral attack."

Defendant in this case did not even attempt to pursue an appeal of the English judgment. In addition, the statutory exception to enforcement of foreign judgments for "conflict with another final and conclusive judgment" is discretionary. Here, defendant has offered no reason, beyond the existence of the conflict itself, why it would be more equitable for this court to enforce the California clerk's "dismissal with prejudice" than the English judgment, which followed a full consideration of the merits of plaintiff's claims.

The logic of the comments made by Professors Ginsburg and Smit nevertheless warrants consideration of whether the English court showed sufficient respect for the California dismissal, and of the degree to which defendant's fate was determined by an impartial tribunal. The reasoning and conclusions of the English court represent a sound and sensitive evaluation of the conflicting interests with which it was presented. The English court gave extensive and intelligent consideration to the res judicata effect of the California dismissal, under both California and English law. In addition, there has been no suggestion or evidence of any partiality by the English courts. Nor is there any reason to believe that an English court would tend to be biased in favor of an American woman seeking to enforce an American judgment against an American man living and holding property in England. A review of the issue by the English courts provided as impartial a forum as the United States Supreme Court, and if anything a greater prospect of full consideration on appeal than is afforded by the opportunity to seek certiorari in our highest tribunal.

Defendant argues that plaintiff contrived to have an English court enforce the Separation Agreement because she knew that "the attitudes and law toward divorce [in England] differ fundamentally from the United States," and that "defendant would be unable to assert in any meaningful way the defenses to the merits" of her claims. Defendant's Supplemental Memorandum at 14. But plaintiff cannot be faulted for pursuing defendant where he chose to live.

 Finally, defendant for the first time raises several defenses to this action in his Reply Memorandum. He claims that there was fraud in the inducement of the Separation Agreement, that there was a lack of representation by counsel at the divorce, that plaintiff's attorneys were his former colleagues, and that he was subject to mental duress and undue influence and interference with his visitation rights. Defendant did not plead these defenses in California, and, although he asserted them in England, he did not pursue them at trial. Defendant offers no factual or legal support for his claim that the English court would not have applied New York law or comparable standards in considering the validity of the defenses. The collateral-estoppel arguments that the defendant would have this court apply to the plaintiff's claims are applicable to his own defenses. As Judge Weinfeld has stated, "a party that failed to present relevant arguments or issues to the appropriate tribunal may not thereafter be relieved of its judgment on the ground that it failed to decide specific issues that could have been presented." *Meinrath v. Singer Co.,* 87 F.R.D. 422, 431 (S.D.N.Y.1980).

III. *Conclusion*

Defendant complains in his memorandum that he "has been compelled to sail the

litigation waters of New York, . . . California and England" and only "seeks to end the litigation odyssey forced upon him by his former wife." Defendant's flight from judgment surely lacks the epic dimensions that he suggests. And even if Mr. Ackerman has proven as crafty as Ulysses, Mrs. Ackerman has shown herself as persevering as Penelope. The "odyssey", in any case, was certainly not plaintiff's idea. She has attempted to end it in three jurisdictions, but defendant has drawn out the voyage by refusing to pay the debts that two courts have ruled that he owes her. The time has come to take the wind out of Mr. Ackerman's sails. Defendant's motion to dismiss or for summary judgment is denied. Plaintiff's motion for partial summary judgment on count one of her complaint is granted. Plaintiff should prepare a proposed judgment on notice within ten days.

SO ORDERED.