**In re Gerald GATES, Geraldine Gates, Debtors.**

**Bankruptcy No. 92–14818.**

United States Bankruptcy Court, N.D. New York.

Aug. 10, 1995.

Peter A. Orville, Vestal, New York, for Debtors.

Levene, Gouldin & Thompson (Albert B. Kukol, of counsel), Binghamton, New York, for Algie Raines.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion filed by Gerald and Geraldine Gates ("Debtors") on May 12, 1993, for an order pursuant to § 502(b)(1) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") seeking to disallow Algie Raines' ("Raines") claim # 3.[1] Debtors seek to disallow Raines' claim for a secured debt in the amount of $24,554.84.

Following two consensual adjournments, a hearing was held before the late Honorable Justin J. Mahoney on August 24, 1993, at a regular motion term of the Court.[2] The parties were then afforded an opportunity to further brief their respective positions and stipulate to the chronology of events underlying the present motion. The matter was submitted for decision on October 20, 1993.

### JURISDICTIONAL STATEMENT

This Court has core jurisdiction over the parties and the subject matter of this contested matter pursuant to 28 U.S.C.

1. Without citing any Code sections, Debtors' motion papers bluntly request the Court "to *withdraw* the following claim [Raines' claim] ..." *See* Debtors' Objection to Claim, dated May 12, 1993 (emphasis added). Based on the narrative of the instant contested matter, the Court assumes that Debtors seek to *disallow* Raines' claim # 3 pursuant to Code § 502(b)(1).

2. The pending submitted matter was transferred for decision to the U.S. Bankruptcy Court in Utica, New York following the June 10, 1994, death of Judge Mahoney.

§§ 1334(b), 157(a), (b)(1), (b)(2)(A), (B), (K), and (O).

## FACTS

On or about June 14, 1988, Debtors entered into an agreement with Joseph and Anita Pinto ("Pintos") for the purchase of a video rental business known as "Mister Video III" located in Great Bend, Pennsylvania. As part of the purchase price Debtors, as purchasers, delivered to the Pintos, as sellers, a note, dated June 18, 1988, ("note") in the original principal amount of $18,000. The note was secured by a mortgage ("mortgage") on Debtors' residence in Deposit, New York. The Pintos subsequently assigned the note and mortgage to Raines on August 6, 1988.

On or about January 17, 1990, Raines commenced a mortgage foreclosure action against Debtors in New York State Supreme Court, Delaware County ("New York state court"). *See* Raines' Exhibit "A". Issue was joined by service of an answer on behalf of Debtors on or about March 2, 1990. *See* Raines' Exhibit "B". In their answer, Debtors asserted four affirmative defenses and a counterclaim which alleged that the Pintos made false and fraudulent representations in order to induce Debtors to purchase Mister Video III. *Id.* Debtors further alleged that Raines was aware or should have been aware of the defenses of fraud when he acquired the mortgage from the Pintos, that he took subject to the defenses and that he was not a holder in due course. *Id.* Debtors' answer demanded, *inter alia,* that the mortgage be determined null and void and that Debtors be awarded damages in the sum of $30,000. On or about April 5, 1990, Debtors served a third party summons and complaint on the Pintos who were subsequently joined as party defendants. *See* Raines' Exhibits "F" and "G".

Thereafter, by way of a motion dated June 6, 1990, Raines moved the New York state court for summary judgment against Debtors, for an order striking Debtors' affirmative defenses, and for an order dismissing the counterclaim ("summary judgment motion"). *See* Raines' Exhibit "H". The Honorable Carl J. Mugglin ("Justice Mugglin"), Justice of the New York State Supreme Court, Delaware County, issued a Decision dated July 27, 1990, granting Raines' motion for summary judgment in all respects. *See* Raines' Exhibit "O". Justice Mugglin found, among other things, that Debtors had not submitted any evidence to refute Raines' claim that he was a holder in due course of the note and mortgage. *Id.* As such, Justice Mugglin concluded that Raines acquired the note and mortgage free from all claims and defenses and, therefore, any claim of fraud against the Pintos could not act as an offset to the amount due and owing Raines. *Id.* Thereafter, on August 22, 1990, Justice Mugglin entered an Order which incorporated his July 27, 1990, Decision and appointed a referee in Raines' foreclosure action. *Id.*

A Final Judgment of Foreclosure and Sale was entered on March 27, 1991, by the New York state court. *See* Raines' Exhibit "P". Thereafter, by order to show cause dated April 15, 1991, Debtors requested the New York state court to vacate its prior Judgment of Foreclosure and Sale on the grounds of fraud, misrepresentation or other misconduct and to allow Debtors to recover $30,000 in damages. *See* Raines' Exhibit "Q". By Decision and Order dated April 17, 1991, Justice Mugglin found "an absence of any showing of fraud, misrepresentation or other misconduct of any nature," and declined to grant Debtors' requested relief. *See* Raines' Exhibit "S".

On September 30, 1992, Debtors filed a notice and complaint in the Court of Common Pleas of Susquehanna County, Commonwealth of Pennsylvania ("Pennsylvania court"), against the Pintos and Raines. *See* Raines' Exhibit "T". The complaint avers that Debtors and the Pintos entered into an agreement of sale for the purchase of Mister Video III and all of its assets including all inventory, fixtures, accounts receivable, and good will. *Id.* The complaint recites that the consideration for the purchase of the business included an $18,000 note secured by a mortgage against Debtors' residence in Deposit, New York. *Id.*

Debtors alleged that the Pintos knowingly and intentionally misrepresented the assets of the business in order to fraudulently in-

duce Debtors to purchase Mister Video III. *Id.* Debtors also alleged that defendant Raines is the current holder of the mortgage and that the conveyance through which the mortgage was originally given was fraudulent. *Id.*

The prayer for judgment, requested that:

a. the contract for the sale of the business Mr. Video III is null and void based on fraud in the inducement by Defendant Joseph M. Pinto;

b. that the Defendants return all consideration for the sale of the business to the Plaintiffs;

c. that the mortgage currently held by Defendant Raines be found null and void due to the fraudulent means through which it was obtained; and

d. order all Defendants to pay Plaintiffs' legal costs and the costs of this suit.

Debtors attempted to effect service of the Pennsylvania court action on Raines by serving Albert B. Kukol, Esq. ("Kukol"). Although Kukol had represented Raines in the prior New York state court proceedings, he refused to accept service on behalf of Raines. *See* Raines' Exhibit "BB". Contemporaneously, Debtors filed for relief under Chapter 13 of the Code on November 16, 1992.[3]

As Debtors were unsuccessful in effecting personal service on Raines, the Pennsylvania court entered an order dated December 8, 1992, which authorized service by publication. *See* Raines' Exhibit "W". Notice of the pending Pennsylvania court action was thereafter published for seven successive days commencing January 14, 1993, in the Ocala Star–Banner, published in Marion County, Ocala, Florida. *See* Raines' Exhibit "X".

Upon failure of the Pintos and Raines to appear in the Pennsylvania court action, Debtors moved for entry of a default judgment. *See* Raines' Exhibit "Y". Thereafter, on March 29, 1993, the Pennsylvania court entered a default judgment ("default judgment") which,

assessed against Defendants in the amount of $32,000 together with interest from September 30, 1992 at the rate of Eighteen (18%) percent per annum ... and mark as null and void and strike from the records the mortgage on Plaintiffs' [Debtors'] premises as demanded in the complaint. *See* Kukol's Affidavit dated June 18, 1993, Exhibit "E".

Thereafter, on June 22, 1993, Raines made a motion in the Pennsylvania court to open the default judgment and dismiss Debtors' complaint. *See* Raines' Exhibit "AA". In an Opinion dated August 4, 1993, Presiding Justice Seaman of the Court of Common Pleas of Susquehanna County, Commonwealth of Pennsylvania, denied the relief requested, finding that Raines was lawfully served with process and that the default judgment was lawfully entered. *See* Raines' Exhibit "CC".

On September 2, 1993, Raines filed a notice of appeal from Justice Seaman's Decision with the Superior Court of Pennsylvania, Susquehanna County ("appeal"). The appeal, however, was dismissed by Order of the Superior Court dated March 11, 1994, for failure to file a brief.[4]

### ARGUMENTS

Debtors request the Court to disallow Raines' secured claim in the amount of $24,554.84. Debtors contend that the Pennsylvania court default judgment renders Raines' mortgage null and void. As such, Raines' secured claim should be disallowed.

Raines alleges that he first learned of the Pennsylvania court action and the default judgment upon receipt of the pending objection to claim. He avers that he was not personally served with any notice of sum-

---

**3.** Debtors had previously filed a Chapter 13 petition on September 5, 1990. Debtors' first petition was dismissed on October 27, 1992, on motion of then Chapter 13 Trustee Robert E. Littlefield, Esq., for failure to make payments. The Honorable Robert E. Littlefield was appointed Bankruptcy Judge for the Northern District of New York effective May 1, 1995.

**4.** Although the Superior Court's Order dismissing the appeal was not offered as an exhibit, the Court takes judicial notice of the judgment. *See Oneida Motor Freight v. United Jersey Bank,* 848 F.2d 414, 416 n. 3 (3d Cir.1988), *cert. denied,* 109 S.Ct. 495, 488 U.S. 967, 102 L.Ed.2d 532 (1988); *see also Sure–Snap Corporation v. State Street Bank and Trust Company,* 948 F.2d 869, 872 (2d Cir.1991).

mons or with the complaint and that the notice of application for entry of the default judgment was sent to a prior address in Ocala, Florida where he has not resided since September, 1991. Raines argues that the default judgment should be accorded no weight because the court lacked jurisdiction over his person and because it is improperly being used to collaterally attack the prior New York state court judgments which decided the very same issues between the same parties.

## DISCUSSION

The matter *sub judice* presents a case in which multiple suits with common issues and parties have resulted in inconsistent judgments. The New York state court, by Decisions dated July 27, 1990, and April 17, 1991, dismissed Debtors' allegations that they were fraudulently induced into purchasing Mister Video III. The New York state court judgments also denied Debtors' request to find the mortgage on their residence null and void and denied their request for damages. By contrast, the Pennsylvania court held, pursuant to a default judgment dated March 29, 1993, that Debtors were fraudulently induced into purchasing Mister Video III, that the mortgage was null and void, and that they were entitled to damages in the sum of $32,-000. The issue before the Court, then, is to determine which prior inconsistent judgment has estoppel effect.

■ Where there are two inconsistent judgments and each would be entitled to preclusive effect if it stood alone, the later judgment controls in a third action. *See Treinies v. Sunshine Mining Co.,* 60 S.Ct. 44, 308 U.S. 66, 84 L.Ed. 85 (1939); *Rosenstiel v. Rosenstiel,* 368 F.Supp. 51, 59 (S.D.N.Y.1973) (citing New York cases), *aff'd,*

503 F.2d 1397 (2d Cir.1974)[5]; Restatement (Second) of Judgments § 15; *see also Ackerman v. Ackerman,* 517 F.Supp. 614, 623 (S.D.N.Y.1981), *aff'd,* 676 F.2d 898 (2d Cir. 1982). A leading commentator explains the reasoning of this so called "last-in-time" rule[6]:

> [T]he first judgment in time must be recognized in a second action involving the same parties and cause. But if the second court refuses the first judgment its deserved recognition, a third court must nonetheless honor the second court's judgment. The reason is that the second court's error in refusing recognition to court one should have been corrected by appeal in the second forum, not by collateral attack in yet a third forum. *See* Siegel, Practice Commentary C5304:1, 7B McKinney's Consolidated Laws of New York Annotated §§ 5101–5500, at 494 (citing *Treinies v. Sunshine Mining Co., supra,* 60 S.Ct. 44, 308 U.S. 66).

The Supreme Court in *Treinies v. Sunshine Mining Co.,* however, recognized two exceptions to the last-in-time rule. *See Treinies v. Sunshine Mining Co., supra,* 60 S.Ct. at 50, 308 U.S. at 78. The last judgment is "unassailable collaterally *except* for fraud or lack of jurisdiction." *Id.* (emphasis added).

■ In the present matter the Pennsylvania court's default judgment was rendered last-in-time. Raines argues that this judgment is not probative or controlling because pursuant to the "full faith and credit clause of Article IV of the United States Constitution and the full faith and credit statute in 28 U.S.C.A. § 1738 ..." the Pennsylvania court should have given preclusive effect to the New York state court judgments.[7] Kukol's Affidavit, dated June 18, 1993, at ¶ 15.

---

**5.** The Second Circuit Decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. The Second Circuit provides by rule that oral opinions or summary orders are not citable as precedent. *See* Second Circuit Local Rules § 0.23.

**6.** For a criticism of the last-in-time rule see Justice Ruth Bader Ginsburg's article entitled "Judgments in Search of Full Faith and Credit: The Last in Time Rule for Conflicting Judgments," 82 Harv.L.Rev. 799 (1966). It must be

noted that Justice Ginsburg's proposals are not the law in New York. *See Ackerman v. Ackerman, supra,* 517 F.Supp. at 625.

**7.** 28 U.S.C. § 1738 is entitled "State and Territorial statutes and judicial proceedings; full faith and credit." This section requires federal courts to give full faith and credit to state court judgments. *See Mitchell v. National Broadcasting Co.,* 553 F.2d 265 (2d Cir.1977).

Raines' failure to file an answer in the Pennsylvania court proceeding resulted in a default judgment. Thereafter, Raines moved to open the default judgment by arguing, *inter alia*, that the Pennsylvania court lacked jurisdiction because of improper service and that the prior New York state court judgments were entitled to full faith and credit. *See* Raines' Exhibit "AA". Following the denial of the motion, Raines appealed to the Superior Court of Pennsylvania, Susquehanna County. The appeal, however, was dismissed on March 11, 1994, for failure to file a brief.

Having failed in both the Pennsylvania trial court and on appeal in the Superior Court of Pennsylvania, Raines now comes to this Court to undo the default judgment. Even assuming that the Pennsylvania court should have given the prior New York state court judgments full faith and credit and their proper preclusive effect, this Court lacks jurisdiction to nullify the default judgment. *See Rosenstiel v. Rosenstiel, supra,* 368 F.Supp. at 59. The appropriate procedure to raise the preclusive effect of the New York state court judgments was as an affirmative defense in the Pennsylvania court or on direct appeal. *See Consolidation Coal Company v. District 5, United Mine Workers of America,* 485 A.2d 1118, 1121, 336 Pa.Super. 354 (1984) (citing Pennsylvania Rules of Civil Procedure 1030); *Rosenstiel v. Rosenstiel, supra,* 368 F.Supp. at 59 (citations omitted).

■ Raines, in fact, had a *res judicata* defense available to him in the Pennsylvania court, and an appellate avenue for correction of erroneous rejection of his defense. Raines' failure to pursue the appellate route to its conclusion precludes him from collaterally attacking the default judgment in this Court. *See Southard v. Southard,* 305 F.2d 730, 732 (2d Cir.1962); *see also Hubbell v. U.S.,* 18 S.Ct. 828, 831, 171 U.S. 203, 209, 43 L.Ed. 136 (1898) (appeal dismissed because of procedural requirements does not affect preclusive effect of prior judgment). Therefore, absent a showing that the Pennsylvania court lacked jurisdiction or a demonstration of fraud, this Court may not set aside the default judgment and can only stop the chain of litigation where it now stands. *See Porter*

*v. Wilson,* 419 F.2d 254, 259 (9th Cir.1969), *cert. denied,* 90 S.Ct. 1260, 397 U.S. 1020, 25 L.Ed.2d 531 (1970).

■ Raines does indeed argue that the Pennsylvania court lacked jurisdiction and therefore the default judgment "is not probative or controlling ...". *See* Raines' Memorandum of Law at 1–3. As support for the argument he contends that, "Service by publication coupled with a notice of entry of default which was sent to a former address known to be outdated, without a copy to the defendant's attorney, is certainly not reasonably calculated to provide proper notice to Raines." *Id.*

In enacting 28 U.S.C. § 1738 Congress "specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so ..." *See Allen v. McCurry,* 101 S.Ct. 411, 415, 449 U.S. 90, 96, 66 L.Ed.2d 308 (1980). The Second Circuit has held that bankruptcy courts fall within this mandate. *See Kohn v. Leavitt–Berner Tanning Corp.,* 157 B.R. 523, 526 (N.D.N.Y.1993) (citing *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 108 S.Ct. 701, 484 U.S. 1007, 98 L.Ed.2d 652 (1988)).

It is well settled that if a party appears in a proceeding to challenge personal jurisdiction, disposition of the jurisdictional challenge is directly binding as a matter of *res judicata. See Durfee v. Duke,* 84 S.Ct. 242, 245, 375 U.S. 106, 110, 11 L.Ed.2d 186 (1963). The Supreme Court noted in *Durfee v. Duke* that as a general rule "a judgment is entitled to full faith and credit-even as to questions of jurisdiction- when ... those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Id.; Noetzel v. Glasgow, Inc.,* 487 A.2d 1372, 1373, 338 Pa.Super. 458 (1985), *cert. denied,* 106 S.Ct. 1517, 475 U.S. 1109, 89 L.Ed.2d 915 (1986).

Raines moved the Pennsylvania court to open the default judgment based on the argument that service by publication and notice of the default judgment was improper and, as such, the Pennsylvania court lacked jurisdiction. Pursuant to a Decision dated August 4,

1993, the Pennsylvania court held that Raines was lawfully served with process and that the default judgment was lawfully entered. As noted above, this Decision was the subject of appeal which was subsequently dismissed by the Superior Court of Pennsylvania. Because the jurisdictional issue was actually litigated in the Pennsylvania court, this Court, pursuant to 28 U.S.C. § 1738, is bound by that judgment even if it was erroneous. *See Treinies v. Sunshine Mining Co., supra,* 60 S.Ct. at 50, 308 U.S. at 78. Therefore, Raines is now precluded from collaterally attacking the Pennsylvania default judgment on a jurisdictional challenge.

■ The Court next turns to the second exception to the last-in-time rule. Although Raines does not explicitly argue that fraud vitiates the default judgment, he implicitly contends that the judgment is tainted. For example, Raines argues that Debtors did not "reasonably calculate" to provide proper notice to Raines and they *knowingly* mailed the notice of entry of default judgment to an incorrect address. *See* Memorandum of Law at 2–3. In addition, Raines argues that the Debtors did not inform the Pennsylvania court of the previous New York state court judgments.

■ The appropriate test for determining whether the default judgment may be set aside because of fraud is set forth in *Rosenstiel v. Rosenstiel. See Rosenstiel v. Rosenstiel, supra,* 368 F.Supp. at 59–61. *Rosenstiel v. Rosenstiel* involved a matrimonial dispute where the husband obtained an *ex parte* Florida divorce without apprising the Florida court of prior New York proceedings. *Id.* at 55–56. In a third forum, namely, the District Court for the Southern District of New York, the wife argued that her husband had perpetrated a fraud upon the Florida court by failing to bring to the court's attention the prior New York proceedings. *Id.* at 58. The wife argued that such fraud invalidated the Florida divorce. *Id.*

In rejecting the wife's argument the *Rosenstiel* court noted that, " 'It is well-settled

law that the fraud for which a judgment can be impeached must be in some matter other than the issue in controversy in the action.' " *Rosenstiel v. Rosenstiel, supra,* 368 F.Supp. at 60 (citing *Crouse v. McVickar,* 100 N.E. 697, 698, 207 N.Y. 213, 218 (1912)). The *Rosenstiel* court explained that the concealment of a prior judgment constitutes "intrinsic" fraud and, as such, was insufficient to collaterally attack the subsequent default judgment. *Id.* The court held that a judgment may only be set aside upon a showing that it was obtained by "extrinsic" fraud. *Id.*

■ In order to establish "extrinsic" fraud the alleging party must demonstrate that the default judgment was "actively procured". *Id.* In *Rosenstiel,* the court found that the wife's default in the Florida court was not actively procured as she was "properly served by publication in the Florida proceeding and chose not to appear." [8] *Id.* The Pennsylvania cases are in accord with the holding of *Rosenstiel v. Rosenstiel. See In re Kovalchick,* 175 B.R. 863, 868 n. 1 (Bankr. E.D.Pa.1994) (citing *state court* case that held Pennsylvania courts will not set aside a judgment upon an allegation of intrinsic fraud). Thus, Raines must demonstrate that Debtors "actively procured" the Pennsylvania default judgment in order to establish "extrinsic" fraud. *Rosenstiel v. Rosenstiel, supra,* 368 F.Supp. at 60.

In denying Raines' motion to open the default judgment, the Pennsylvania court determined that service by publication was lawful. *See* Raines' Exhibit "CC". In addition, prior to publication Debtors attempted to serve Raines through service upon Kukol. Although Kukol represented Raines in the prior New York state court actions, eventually appeared on behalf of Raines in the Pennsylvania court, and represents Raines in this bankruptcy case, Kukol refused to accept service on behalf of Raines. *See* Raines' Exhibit "BB". In consideration of these factors, the Court finds that Raines has not sustained his burden of demonstrating that the default judgment was procured by collusion or fraud.

---

**8.** The *Rosenstiel* court gave no weight to the wife's allegations that her default was actively procured because she feared that her husband would physically harm her if she appeared in the Florida proceeding. *Id.* at 55–56.

In the absence of compelling evidence that the default judgment was actively procured, this Court finds that the Pennsylvania court proceeding is not open to collateral attack. As the default judgment renders the mortgage on Debtors' residence null and void, Raines' secured claim is disallowed.

For the foregoing reasons, it is hereby

ORDERED that Debtors' motion to disallow Raines' claim # 3, which is for a secured debt in the amount of $24,554.84, is granted.